UNITED STATES v. ROSE. See Cases Nos. 10,285 and 10,286.

## Case No. 16,196.

### UNITED STATES v. ROSS.

[1 Gall. 624.] [1]

Circuit Court, D. Rhode Island. Nov. Term, 1813.

FEDERAL COURTS — ADMIRALTY JURISDICTION — PIRACY IN FOREIGN ROADSTEAD—MURDER —ACCOMPLICES—CONSPIRACY.

1. The circuit court has cognizance under the act of the 30th of April, 1790, c. 9, § 8 [1 Stat. 113], of piracy on board of an American ship, although committed in an open roadstead, adjacent to a foreign territory, and within a half mile of the shore.
[Cited in Ex parte Byers, 32 Fed. 407.]

2. The "high seas," in that act, mean any waters on the sea coast, which are without the boundaries of low water mark.
See U. S. v. Pirates, 5 Wheat. [18 U. S.] 184; U. S. v. Robinson [Case No. 16,176]. See, also, U. S. v. Grush [Id. 15,268]; Thomas v. Lane [Id. 13,902]; U. S. v. Davis [Id. 14,932]; The Harriet [Id. 6,099]; Curt. Tr. Seamen, p. 362, and authorities there cited.
[Distinguished in U. S. v. Morel, Case No. 15,807. Cited in U. S. v. New Bedford Bridge, Id. 15,867; U. S. v. Plumer, Id. 16,056. Cited in dissenting opinion in U. S. v. Rodgers, 150 U. S. 249, 14 Sup. Ct. 116.]

3. To make a man a principal in murder, it is not necessary that he should inflict the mortal wound. It is sufficient, if he be present, aiding and abetting the act. Nor is it necessary, that there should be a particular malice against the deceased. It is sufficient, if there be deliberate malignity and depravity in the conduct of the party.
[Cited in People v. Chapman, 62 Mich. 286, 28 N. W. 898.]

4. If a number of persons conspire together to do an unlawful act, and death happen in the prosecution of the design, it is murder in all. If the unlawful act was a trespass, the murder to affect all, must be done in the prosecution of the design. If the unlawful act be a felony, it will be murder in all, although the death happen collaterally, or beside the principal design.
[Cited in brief in Com. v. Nickerson, 87 Mass. (5 Allen) 525. Cited in Stephens v. State, 42 Ohio, 153.]

[1] [Reported by John Gallison, Esq.]

5. If several persons conspire to seize with force and violence a vessel, and run away with her, and if necessary to kill any person who shall oppose them in the execution of the design, and death ensue in the prosecution of the design, it is murder in all who are present, aiding and abetting in executing the design. [Cited in U. S. v. Douglas, Case No. 14,989; U. S. v. Boyd, 45 Fed. 863.]

[6. Cited in The Ambrose Light, 25 Fed. 424, to the point that if several persons conspire to seize with force and violence a vessel, and, in carrying out their designs, kill one of the persons on board, it is a clear case of piracy at common law.]

The prisoner [William Ross] was indicted for being present, aiding, and abetting, in the murder of a colored man, on board of the American schooner Pocahontas, on the high seas, near the Cape de Verd islands. At the trial it appeared, that on or about the 5th of June, 1812, the schooner lay at anchor in an open roadstead or bay, near the isle of St. Jago, one of the Cape de Verd islands, about a half mile from the shore, and about a mile from the town of Praga. There were several passengers on board (and among them the person, who was murdered) who were to have been landed at the island of Fogo; but the vessel had a cargo on board and was bound for Boston. About midnight, the prisoner, who acted as ringleader, and nine Portuguese convicts, came on board, armed with muskets, cutlasses, and long knives, took possession forcibly of the vessel, drove those of the crew, who were on deck, below, wounded two persons on deck, knocked down the mate, who was coming up the companion way, and stabbed the colored man, who was on the deck, in four places, of which wounds he died within a half hour. The ruffians then cut the cables, hoisted the sails, and stood out for sea, intending to proceed to South America. It did not appear precisely where the vessel was, when the death of the colored man took place; but she was adrift, and the sails hoisting with a breeze off shore; and according to the testimony, from two to six miles from the land. The seizing of the vessel was proved to have been by a preconcert, and with a determination to accomplish the enterprise, be the consequences ever so fatal. There was a great deal of evidence in the cause, as to the subsequent proceedings and the final rescue of the vessel by the captain and his crew, aided by the prisoner, whom the captain had brought over to his side by exciting jealousies between him and his companions. But it is inconsistent with the object of this report to state it at large; and therefore, so much only of the evidence, as raised the points of law, in which the court gave an opinion, is presented. There was no evidence, by whom the mortal wounds were given. But all the conspirators were on the deck at the time, engaged in assisting each other; and the prisoner acted as their chief, and was armed in the same manner as the others. The pretence alleged for this piratical enterprise, and insisted on at the trial, as a defence, was that the conspirators

seized the vessel, in order to recover their personal liberty, and escape from the control and subjection of the Portuguese government.

It was insisted: (1) That the court had not jurisdiction over the offence, because it was committed in a roadstead or bay, within the jurisdiction of a foreign country, and not on the high seas; (2) that if the court had jurisdiction, the prisoner could not be convicted on the indictment, as it was not proved, that he was present at the time when the wounds were given, or ordered them to be given, though he was on the deck and engaged in the common enterprise; (3) that the seizure of the vessel was a mere marine trespass and not a felony, and therefore the killing in this case was not murder. In support of these positions, Whipple & Searle, for the prisoner, cited Act April 30, 1790, c. 9, § 8; 1 Hawk, c. 31, § 53; 4 Bl. Comm. 195, 200; Plow. 471, 473; 4 Bl. Comm. 231; 1 Hawk. P. C. c. 37, §§ 1, 4; Fost. Crown Law, 350.

Bowen & Robbins for the United States, cited, e contra, 4 Bl. Comm. 195; U. S. v. McGill [Case No. 13,989, note]; s. c., 4 Dall. [4 U. S.] 428 [Case No. 15,676].

Before STORY, Circuit Justice, and HOWELL, District Judge.

STORY, Circuit Justice (after summing up the facts). The first question to be decided is, whether the court has jurisdiction over the offence, as proved in the evidence; or in other words, was the offence committed on the high seas, within the true intent and meaning of the act of the 30th of April, 1790, c. 9, § 8? From the language of the act I am of opinion, that the words, "high seas," mean any waters on the sea coast, which are without the boundaries of low water mark; although such waters may be in a roadstead or bay within the jurisdictional limits of a foreign government. Such is the meaning attached to the phrase by the common law; and supported by the authority of the admiralty, perhaps to a more enlarged extent. 3 Inst. 113; 1 Rolle, 250; 4 Inst. 134; 1 Inst. 260a; Hale de Port in Harg. 10; 5 Coke, 106; Exton, 80, etc.; Com. Dig. "Admiralty," E (7); 2 East, P. C. 803. The additional words of the act, "in any river, haven, basin or bay, out of the jurisdiction of any particular state," refer to such places without any of the United States, and not without foreign states, as will be very clear on examining the provision as to the place of trial, in the close of the same section.

In the present case, the crime was not completed, until the vessel was standing out at sea under sail. The mortal stabs were given, when the vessel was about a half mile from the shore; but the death did not happen, until the vessel had either drifted or sailed a considerable distance. I do not however deem the difference material. Had the death occurred instanter, I think it would have been a homicide on the high seas.

To constitute the crime of murder, it is not

necessary that the slayer should have a particular enmity or malevolence against the deceased; it is sufficient, if there be either a deliberate malice in the act, or circumstances of cruelty and malignity carrying in them the plain indications of a depraved, wicked, and malignant spirit. Fost. Crown Law, 257. Nor is it necessary, to constitute murder, that the party should himself inflict the mortal wounds. It 's sufficient if he is present, aiding and abetting the act. In common sense and reason, as well as law, the ruffian, who stands by and directs or encourages the bloody deed, is equally guilty with him, who applies the poniard.

In the present case, the prisoner and his associates, if the evidence be believed, had entered into a most atrocious conspiracy, in which they were but too successful. The murder (for there can be no doubt it was such in some one of the party) was committed in the course of the execution of that conspiracy. It was a natural, though not a necessary consequence, of the attempt to execute it. The conspirators appear to have armed themselves for the purpose of ensuring success at all hazards; and, indeed, so is the confession of the prisoner himself. It is said, that the original intention of the prisoner and his associates was, not to commit murder, but forcibly to seize the vessel; that such an act was not a felony, but a mere marine trespass, and therefore if death ensued, it would not be murder.

Whether the intention was felonious or not, may not be very material to settle. If by a felony be meant an act punishable with death in the United States, or for which the goods and lands of the party were forfeitable at common law, the conclusion is correct; for the running away with a vessel of the United States is a capital offence only in a captain or mariner of the vessel, and the common law forfeitures do not attach on such an offence. 2 East, P. C. 796. But if by a felony be meant an act punishable by the common law with death, there can be no doubt, that the intention in this case was felonious, for if the evidence be believed, it was a clear case of piracy at the common law. But even supposing the intention was not felonious, still the distinction of the prisoner's counsel cannot be supported.

If a number of persons conspire together to do any unlawful act, and death happen from any thing done in the prosecution of the design, it is murder in all, who take part in the same transaction. Fost. Crown Law, 344, 350, 351; 1 East, P. C. 259. If the design be to commit a trespass, the death must ensue in prosecution of the original design, to make it murder in all. 1 Hale, P. C. 443, 444; J. Kel. 112, &c.; Fost. Crown Law, 351. If to commit a felony, it is murder in all, although the death take place collaterally, or beside the principal design. 1 East, P. C. 255, 256, 258; Fost. Crown Law, 258. More especially will the death be murder, if it happen in the execution of an unlawful design, which, if not a felony, is of so desperate a character, that it must ordinarily be attended with great hazard to life; and, a fortiori, if death be one of the events within the obvious expectation of the conspirators. Fost. Crown Law, 261, 351–353.

If, therefore, the jury believe the evidence, that the prisoner with his associates did conspire to seize the schooner with force, and run away with her, against the will of the master and crew, and meant in the prosecution of such conspiracy, if necessary, to kill whoever should oppose them in executing their project; that the prisoner was the chieftain and actually present on board, aiding and assisting in accomplishing the project by all the means in his power; and one of the associates did, on that occasion, kill the unhappy passenger, in aid of the general design; I hold, that the homicide so perpetrated was murder, and that the prisoner and all his associates then present were principals in guilt. See Fost. Crown Law, 349, 350.

The jury found a verdict of not guilty.