# UNITED STATES *v.* BOYD *et al.*

*(Circuit Court, W. D. Arkansas.　October 28, 1890.)*

1. **WHAT CONSTITUTES MURDER.**
    The statutes of the United States, providing for the punishment of the crimes of murder and manslaughter, do not define murder, but do manslaughter. We must therefore go to the common law to ascertain the definition of murder.

2. **SAME.**
    Under the law of the United States there can be but two crimes growing out of the taking of human life—murder or manslaughter. To constitute murder the killing must be done willfully, and with malice aforethought.

3. **SAME—WILLFULLY, WITH MALICE AFORETHOUGHT.**
    Aside from the acts of violence which produce a deadly result these acts must be executed willfully, and with malice aforethought. The word "willful" and the phrase "malice aforethought" have a technical legal meaning which should always be clearly given by the court to the jury.

4. **SAME.**
    The word "willful," as used in connection with a homicide, means a killing that is intentional, and not accidental.

5. **SAME—ACCIDENT.**
    An accident as recognized in law is something that occurs after the exercise of the care required by the law to prevent its occurrence.

6. **SAME—INTENT.**
    The law fastens intent to every act that is not an accident. Every act that produces death that is outside of the definition of the word "accident" is intentional in the law, whether it grows out of a specific design to take life, or of gross carelessness, or it arises from a condition of mind that prompts the possessor of that mind to be engaged in some wrongful or criminal act which from its nature, or the way it is executed, may reasonably or probably produce death.

7. **SAME.**
    That the act producing death was intentional may be found from the nature of the act done, and the way it is done, the character of the weapon used, the way it was used, and the result produced by such use. This is upon the principle that every man by the law is held to intend the natural, reasonable, ordinary, and probable consequences of his act.

8. **SAME—MALICE.**
    The peculiar distinguishing trait of murder, the grand criterion which distinguishes it from other homicides, is malice aforethought. Malice aforethought means an intention to do such bodily harm as may produce death in the absence of mitigating facts or justifying circumstances, or a formed design to do such mischief as may endanger life, or it is an intent of the mind and heart which prompts the doing of a wrongful act without just cause or excuse, or in the absence of that which justifies the act, or which reduces the grade of the crime.

9. **SAME—EVIDENCE.**
    The fact that an act is willful, and done with malice aforethought, is necessarily a circumstantial fact, for they are of the mind and heart, and there never can be presented to the jury direct or positive evidence of what was the intent of a man's heart at the time of doing an act. These necessary elements of murder must always be established by circumstantial evidence.

10. **SAME—CONSPIRACY TO COMMIT FELONY.**
    If a number of persons enter into an agreement to commit a criminal act, and proceed to execute such conspiracy, and in the execution of it a person is killed by one of such conspirators, all who have entered upon the commission of the criminal act, and continue in the execution of it up to the time of the killing, are guilty of the crime of murder, provided the act agreed to be done is one which from its nature, or the way it is to be executed, may jeopardize, or is dangerous to, life, or homicidal in character. This is because all persons must be held to intend the necessary and natural consequences of their acts. An agreement to commit a robbery is an agreement to do such an act that if a person is killed in the execution of it all who are in the conspiracy to rob, and are aiding in executing it at the time of the killing, are guilty of murder, for the crime of robbery is homicidal in its character.

11. **SAME.**
    When the unlawful act agreed to be done is not of a dangerous or homicidal character, or its execution does not necessarily or probably require the use of such force or violence as may naturally or probably produce death, and a person is killed

by one of the conspirators while such act is being done, such killing is regarded by the law as collateral to the conspiracy to commit the other crime, and he only who does the killing is liable for such killing.

12. ARREST WITHOUT WARRANT.

If a felony was actually committed, a private person is justified in arresting without a warrant one whom he has good reason to believe to be guilty of it, even though the person arrested should afterwards be proven to be innocent.

13. FELONY—PRINCIPALS.

All who are present either actually or constructively at the place of crime, and are either aiding, abetting, assisting, or advising the commission of a crime, or are so present for such purpose, are principals in that crime.

14. EVIDENCE OF COLLATERAL OFFENSE.

If the evidence offered in a case is relevant or pertinent to the point in issue, or tends to prove the crime charged, or any element of it, it is not incompetent, although it may show the commission of another crime independent of or disconnected with the crime charged, e. g., if proof of a collateral offense, such as a robbery, tends to identify the defendants, it is relevant evidence, and admissible, and, being admissible, it cannot be excluded because it shows defendants have committed another extraneous offense.

(*Syllabus by the Court.*)

At Law.

The defendants were indicted for the murder of one John Dansby, a colored man. The government charged that the defendants, together with another party, committed the crime of murder, by killing Dansby while they were attempting to rob him. After the evidence was all heard, and the argument of counsel had closed, the court charged the jury, and afterwards they returned a verdict of murder.

*William H. H. Clayton*, U. S. Dist. Atty.

*George A. Grace, J. C. Byers*, and *N. L. Marmon*, for defendants.

PARKER, J., (*charging jury.*) The defendants, John Boyd and Eugene Stanley, are before you charged with the crime of murder, for having on the 6th day of April, 1890, at the Choctaw Nation, in the Indian country, taken the life of John Dansby, a negro, and not an Indian, by willfully, and with their malice aforethought, shooting him with a gun. That, in short, is the first count of the indictment.

The second count charges the same set of facts, with the exception of the allegation going to the jurisdiction, and that differs from the first count in the indictment by alleging that Eugene Stanley and John Boyd were white men, and not Indians. The proof, without any controversy, shows that Stanley is an Indian. Therefore, you will confine your finding, if it should be a verdict of guilty, to the first count in the indictment, as the proof shows that fact with reference to Stanley, if you should find him guilty. If it shows such other facts as are necessary to give the court jurisdiction as are alleged in the first count of the indictment, then your finding will be on that count, provided you shall find a verdict of guilty. If you should find a verdict of not guilty, it may be general in its character, and it would be responsive to both charges. Now, you have had the facts that have been offered before you on either side of this case. From these facts you are to get at the truth. You are not enabled by that alone to arrive at a verdict, because there is something else enters into your verdict besides these truths you may obtain from the witnesses in the case, and that is the law that is applicable to

the truth, whatever it may be. These two elements enter into every verdict of a jury,—they go to make it up. Under the method of procedure in the courts of justice of the country the rules of law that may be invoked on either side of a case are given by the court, leaving it to you to make the application of such rule as is applicable to the truth in your judgment. Now, it becomes necessary to see what elements enter into this case,—elements that are to be derived from the truth of the case,—what facts you must find in order to enable you to find that this case is one of murder. You must find, as a jurisdictional fact, to start with, that John Dansby was a negro, and not an Indian. If he was a colored man, or a negro, by blood, that makes a *prima facie* case of jurisdiction. It makes a case of jurisdiction that is good until it is overthrown by proof showing a state of case that would divest the court of jurisdiction. There has been evidence offered in the case going to show ⸵is true *status*, offered for the purpose of showing that by blood he was a colored man, a negro, and further showing that, under the law of the United States reviving a clause of the treaty of 1866, entered into between the government of the United States and the Choctaw Indians,—reviving, I say, a clause or an article of the treaty of 1866 that had lapsed by limitation,—instead of becoming a registered citizen, or a citizen by adoption of the Choctaw Nation, as he might under the law of congress, he registered for the purpose of receiving the $100 that it was provided each colored man should receive who saw proper not to become a citizen, but to elect to leave the country. In order to make him a citizen of the Choctaw Nation, under the treaty and laws, so that this court would not have jurisdiction of a case where parties upon the other side of it (parties, say, that were charged, as these defendants are, with crime) were Indians by blood, or either one of them, in order to divest the court of jurisdiction the evidence must show that John Dansby was registered as a citizen of that country; that he elected to become a citizen, and registered as such. Then, under the treaty and the law, he becomes a citizen as though he was an Indian by blood as far as the jurisdiction of this court is concerned. In a case where a party who may be charged with a crime as an Indian by blood, or by adoption, and the proof fails to show that, but shows that he registered for the purpose of receiving his $100, then his *status* as a citizen of the United States is not changed. He continues to be a citizen of the United States, as is in effect alleged in the first count of this indictment. The purpose of that allegation is to assert that he is a citizen of the United States, because negroes or colored men, as well as white men and all other kinds of men, are jurisdictional citizens, except these people who are exempted from the jurisdiction of the courts of the United States, called "Indians," either by blood, or those who may become such by adoption, to such an extent as to divest courts of the country of jurisdiction over them. Now, you are to look into that question first, because that is a preliminary step to be taken by every jury in a case; to ascertain and pass upon the question as to whether or not the court has a right to try; whether or not you have a right as a jury in this court to sit in judgment upon the merits

of the case, and to pass upon the merits. If the evidence shows that state of case, then I say to you that under the law the court has jurisdiction. Now, let us see what other things enter into this charge. By taking them in detail, and letting our minds go back to the evidence that has been offered, we can more easily understand the nature of the charge than when we undertake to consider all the propositions at once. Let us, then, go about this thing in detail. Let us take it up and examine what propositions enter into this charge to make it up. In the *first* place, the proof must show that this man who is alleged to have been killed by these defendants is dead. That is the first thing,—that John Dansby is dead. You must find that from the evidence. *Secondly*, that he died by violence of the kind named in the indictment; that is, he died because of the injury inflicted on him of the kind named in the indictment. The indictment charges that Dansby was shot with a gun, and that he died of a wound so inflicted. Now, you must be satisfied of that, that is to say, he was shot with a gun, or a kindred weapon, such as a pistol; that the wound was inflicted upon him as is charged in this indictment, and in consequence of the infliction of the wound he died, the wound thereby causing his death. That is the second proposition you are to inquire into from the evidence, to see whether it is established or not, and of course you will understand that all these propositions are to be established beyond reasonable doubt. Now, of course, upon the question as to whether the wound produced the man's death or not, you can only find it inferentially at best. You take into consideration the character of the wound, the part of the person upon which it was inflicted, the condition of the man at the time of receiving the wound, his condition thereafter, and when he died, and if you are satisfied beyond a reasonable doubt that that produced the result called "death," and satisfied of that from the testimony, why that proposition is established. Now, there is a third proposition that is necessary to be established, that is that the act of shooting was done willfully, and with malice aforethought, because these are features which go to make the charge murder. A man may be killed, and may be killed by having received a gunshot wound, but unless he is willfully killed, and killed with malice aforethought, his killing is not a case of murder. Therefore these things are to be looked into. You are to see whether from the facts and circumstances of the case the kind of a proposition is presented in which is involved this element of the crime of murder. Now, you cannot tell whether these elements exist or not until you know what they are, for the reason that they have what is called a "technical" or "legal" meaning attached to them. The word "willful" and the phrase "malice aforethought" have a meaning that the law gives to them, and it is that meaning by which you are to be controlled; it is that meaning of these words that you are to be governed by in your deliberations. It is peculiar to a charge of crime of this kind. It is sometimes called a "legal meaning" that is attached to these words. Therefore it is necessary, right, in this connection, that you should have the definition of these words, or of the word "willful" and the phrase "malice aforethought,"—the defini-

tion that the law attaches to them,—because you are sworn to try this case by the law and·the evidence.

The word "willful" as used in connection with the charge of murder, such as that which is preferred in this indictment against these defendants, means an intentional killing, and not an accidental killing. It means an act which results in death that is intentionally done, and one that is not accidentally done. Now, there is a great difference between that which is in the law accidental and that which is intentional. The law fastens intent to every act that is not an accident. Every act that produces death that is outside of the definition of the word "accident" is intentional in the law, whether it grows out of a specific design to take life or whether it grows out of gross carelessness, or whether it arises from a condition of mind that prompts the possessor of that mind to be engaged in some other wrongful or criminal act, and in the execution of it a life is taken. That which is an accident in the law is something that occurs after the exercise of the care that the law requires to be exercised to prevent its occurrence. When a man exercises the amount of legal care exacted by law, and something occurs beyond that, that is not his willful act. The law recognizes that he does not do it willfully. But when he does an act which naturally or reasonably or probably, from its nature, and the way it is done, produces a certain result, that is held to be an intentional result, because the act as done in that way is intentional; and whenever the act is done, and it is an act that may naturally or probably produce a certain result, whenever the act is done intentionally the result is intentional. For example, if a man presents a gun at another and fires it at him, the fact of drawing the gun and presenting it shows that he wills what he does, shows that that act is a willful act upon his part. And when that state of facts exists, the act of presenting and firing the gun is recognized by common observation and common experience as a willful act. If that act produces death, because there is a known connection between the act and the result which is probable, which is usual, and which is reasonable, the party is said to have intended the result, and consequently to have willed the result. Now, intent is something that can be found only by inference. It can only be found by the circumstances in the case, by the nature of the act done, and the way it was done, and the character of the weapon used, bearing in mind that the law holds every man to know the nature of the weapon that he uses, the purpose for which it is constructed, and the results that naturally and reasonably are produced by it. That is recognized by the law as a matter of common knowledge within the mind of every man who has arrived at the years of discretion. For that reason, when a man presents a gun or a pistol at another, and shoots it at him, the law says he intends to kill him, because the killing is a result that is natural or probable or reasonable.

Now a word in this connection as to how you may find that the act was willfully done:

"The presumption that the law recognizes is that a man is held to have intended the natural and ordinary consequences of his act. Every

sane man, who is a voluntary agent, acting upon a motive, must be presumed to contemplate and intend the necessary, natural, and probable consequences of his own acts. If one voluntarily or willfully does an act which has a direct tendency to destroy another's life, the natural and necessary conclusion from the act is that he intended so to destroy such person's life. So, if the direct tendency of the willful act is to do another some bodily harm, and death in fact follows as a probable consequence of the act, it is presumed that he intended such consequence, and he must stand legally responsible for it. So, where a dangerous and deadly weapon is used with violence upon the person of another, as this has a tendency to destroy life, or to do some great bodily harm to the person assailed, the intention to take life or do him some great bodily harm is a necessary conclusion from the act."

You take the act done. Now, your common observation teaches you that a gun or a pistol fired at another within shooting distance of him will put his life in danger; it may probably destroy it. For that reason, because we recognize that, the law says to us when an act of that kind transpires that any citizen, upon the right of self-defense, may do whatever may become necessary, even to the extent of taking life, to prevent danger to life. Such an act is recognized by the common understanding of men as being one to life so dangerous, so immediately impending over the party, and about to fall upon him, that the right to invoke whatever means are necessary to turn aside that danger then and there springs into existence, and is in the hands of the citizen to be used by him in the face of such a set of facts. This may be done because of the nature of the act, because of its character, because of the results that are usually produced by it. This is a good test of when an act is willful. If that act is willful, that is, if the party draws and presents and fires the gun, the act of drawing and presenting and firing it being prompted by the will of the party, that act is willful; and if death ensues the death is willful, and that is the way you may find it. That is the first element of the crime of murder. It is not the trait that distinguishes murder from any other homicide, because that may exist when you kill a man in self-defense,—you do it willfully; and it may exist in voluntary manslaughter. But there is something else which distinguishes murder from any other homicide, any other grade of killing, any other grade of man-slaying, and that is the phrase "malice aforethought." When that exists it is murder. Now, let us see what is meant by that. Let us get an understanding of it if we can. Let us comprehend it fully, that you may make a proper application of it to the facts in this case. If the facts show that it exists in this case, or that John Dansby's life was taken willfully, and this other element surrounded the transaction known as malice aforethought, the killing of John Dansby would necessarily be murder. Now, what is it? It is defined in a general way to be the doing of a wrongful act without just cause or excuse in such a way, and under such circumstances, as to show that it was done wrongfully, and that it was done in the absence of that which would give the party the right to defend against it; or that it was done

in the absence of mitigating circumstances. And it is defined again as the doing of a wrongful act without just cause or excuse, and in such a way as to show that he who did it had a heart void of social duty, and a mind fatally bent upon mischief. Let us see how the law defines it, and then again how the law tells us it may be found to exist. It can only be found by circumstances, because malice aforethought, like willfully, is something which exists in the mind, and whenever there is a thing which exists in the mind that is necessary to be found to make up the elements of the case, as you cannot get into the mind to know what is going on there, (and you could not tell what was transpiring if you could get into it,) you must learn it in some other way, and there must be some rational way by which you may learn it, some way that rational men would adopt, because you are not authorized to adopt any other method than that which is reasonable in arriving at conclusions, and there is a reasonable way which is the way that the law recognizes as a proper way by which men may arrive at conclusions. It is from the nature of the transaction, the nature of what takes place, the character of the thing done, and all the surrounding facts and circumstances that you are authorized to take into consideration, to see what was the nature of the thing done, whether it was an innocent act or a criminal act, and if a criminal act what was the character of that criminal act.

"Malice aforethought is the grand criterion which distinguishes murder from other homicide, and it is not so properly spite or malevolence to the deceased in particular as any evil design in general; the dictate of a wicked, depraved, and malignant heart, a purpose to do a wicked act; and it may be either express or implied in law. Express malice is when one with a sedate, deliberate mind and formed design doth kill another, which formed design is evidenced by external circumstances discovering that inward intention, as lying in wait, antecedent menaces or former grudges, and concerted schemes to do him some bodily harm. So in many cases, when no malice is expressed, the law will imply it, as when a man willfully poisons another. In such a deliberate act the law presumes malice, though no particular enmity can be proved. And if a man kills another suddenly, without any or without a considerable provocation, the law implies malice; for no person, except of abandoned heart, would be guilty of such an act upon a slight, or upon no apparent, cause."

"Malice is an intention to do bodily harm; a formed design to do mischief. It has also been defined as a deliberate intent to kill. It does not necessarily import especial malevolence towards the individual slain, but also includes the case of a generally depraved, wicked, and malicious spirit, a heart regardless of social duty, and deliberately bent on mischief. It imports premeditation. Therefore there must logically be a period of prior consideration; but as to the duration of that period no limit can be arbitrarily assigned. The time will vary as the minds and temperaments of men, and as do the circumstances in which they are placed. The human mind acts at times with marvelous rapidity. Men have sometimes seen the events of a life-time pass in a few minutes before their mental vision. Thought is sometimes referred to as the very

symbol of swiftness. There is no time so short but that within it the human mind can form a deliberate purpose to do an act; and if the intent to do mischief to another is thus formed as a deliberate intent, though after no matter how short a period of reflection, it none the less is malice."

"Malice is an intent of the mind and heart, the doing of a wrongful act without just cause or excuse, or in the absence of that which justifies the act, or which reduces the grade of the crime. Whenever a wrongful act is done without just cause or excuse, and in the absence of mitigating circumstances, which produces death, it is murder, whether it grows out of special spite or animosity, or a specific design to take life, or a purpose to do some other act of a wicked and malignant and criminal nature, which because of its nature and the way it is done a human life is taken malice aforethought exists, because that is the doing of a wrongful act without just cause or excuse, which results in murder. It evinces a formed design to do such mischief as may deprive a fellow-being of life."

Now, you learn how it may be ascertained, the existence of it.

"Malice is an intent of the mind and heart. There is never presented to a jury direct evidence of what was the intent of the man's heart at the time."

You cannot tell by direct proof, bearing in mind the distinction between these two kinds of evidence, positive or direct proof and circumstantial evidence. Positive or direct proof is the proof which shows the existence of the very thing itself that you are hunting after. It is 'the thing itself that is shown to exist. Circumstantial evidence is proof that may be equally cogent and equally powerful proof of the existence of the thing, but is not the thing itself, but is that which shows its existence in the shape of the surrounding facts and circumstances, in the shape of that which attends every transaction in life; which goes to characterize it one way or the other; which goes to show either that it was a criminal act, a criminal transaction, or that it was a transaction that was honest and upright, and void of crime.

"There is never presented to a jury direct evidence of what was the intent of the man's heart at the time. He is the only possible and direct witness to that, and if he meant so to testify he would plead guilty. The existence or non-existence of malice is an inference to be drawn by the jury from all the facts in the case. The emotions of the heart, the processes of the mind, are to us, or to any one outside of the individual, exhibited by the acts which the individual performs, and you are entitled to infer what his intent was, what were the processes of his mind and the feelings of his heart, by a careful study of the acts which he performs, and all the other external indications which he may have given of what his state of mind and heart was. As an eminent text-writer has put it, there is no case of malicious homicide in which malice is not inferred from attendant circumstances; no case in which it is demonstrated as express."

It cannot be demonstrated as express.

"We have no power to ascertain the certain condition of a man's heart. The best we can do is to infer his intent more or less satisfactorily from his acts. Now, a person is presumed to intend what he does. A man who performs an act which he knows will produce a particular result is from our common experience presumed to have anticipated that result, and to have intended it. Therefore we have a right to say, and the law says, that when a homicide is committed by weapons indicating design, then it is not necessary to prove that such design existed at any definite period before the fatal blow. From the very fact of a blow being struck we have a right to infer as a presumption of fact that the blow was intended prior to the striking, although at a period of time inappreciably distant, and thus we frequently find the statement laid down in reported cases and by text-writers that malice is to be inferred from the use of a deadly weapon."

That naked statement might be misleading.

"Malice is to be inferred from the attendant circumstances which surround the transaction, and the jury have a right and it is their duty to look at these attendant circumstances to see what character of act it was, to see what was the condition of mind of the party or parties who engaged in that act, as being the only way that they can arrive at the conclusion as to whether it was an act accompanied with malice aforethought, or the converse of that, in which there was an absence of that element of the crime of murder."

Now, anything that shows deliberation, anything that shows a premeditated purpose to do a wicked or willful act that might result in death, is evidence that may be considered by the jury as evidence of malice, and of the existence of malice aforethought. For instance, the law lays it down as a principle, if premeditation is shown, if the purpose to kill directly existed in the mind of the party or parties who killed, or the purpose to do a willful act that might result in death is shown by the actions of the party to have had a previous existence, an existence prior to the time of the killing, that shows the existence of malice aforethought, provided there is an absence from the case of that state of facts which goes to show the party had a right to do what he did do. The law lays it down that the deliberate selection and use of a deadly weapon shows premeditation, shows that the act was thought of beforehand; and whenever a party entering upon, whatever unlawful or criminal enterprise he may enter upon, prepares himself with a deadly weapon with the purpose of using it in a wicked or unlawful enterprise, if it be one of that character enabling him to consummate and carry out that enterprise, the selection of a weapon for that purpose is evidence of the existence of malice aforethought, is evidence of the existence of a purpose to do a wrongful act without just cause or excuse, in such a way as to show that the party who does it has a heart void of social duty and a mind fatally bent on mischief. That is the general definition of malice. It shows a purpose to do a wrongful act without just cause or excuse. That is the way you are to find it. You go to the killing. You ascertain how the killing was produced, the way it transpired, the way it was done; you see

what character of weapon was used, you see whether that weapon was prepared beforehand, whether it was deliberately and willfully used at the time, and in a state of case where the evidence shows that the killing was willfully done, if there is an absence from the case of that which shows that the party had a right to so willfully kill upon the law of self-defense, or that the killing was willful, but there were mitigating facts attending it, the proof which shows it was willfully done, shows it was done with malice aforethought; and in a case of that kind the very same degree of proof that establishes a willful killing would establish a killing with malice aforethought.

Now, there are in this case two propositions that it becomes necessary for the court to give you the law upon, and one of them may be given appropriately in this connection. It is claimed by the government that these defendants, together with another party, had entered into a "conspiracy"—that means an agreement to do a wrong, or to do a criminal act, that is what a conspiracy is—to commit upon these persons at that place the crime of robbery, either upon Dansby or upon any of the others there, (it is immaterial which,) or upon all of them. That is the claim upon the part of the government, and that this killing took place while these two defendants, together with the third party, Davis, or Myers, who was killed, were attempting to consummate this purpose of robbery; that the primary design was not to kill, but to rob; and that the killing transpired in the course of the execution of that design; and upon that state of facts the government claims that this is a murder upon the part of all who participated in that purpose to rob. While it is disclaimed upon the part of the defendants that there was any purpose to rob, but that the purpose of these parties, Dansby and the others, who were at that ferry, was to arrest these defendants and Davis, and that, in the course of that attempt to arrest, Dansby and Davis were killed,—that is the claim upon the part of the defendants in the case. Now, that makes it necessary that the court should give you the law bearing upon a state of case where a number of persons enter into an agreement, or have an understanding either expressly or tacitly entered into, to commit the crime of robbery, and in the course of its commission a man is killed who is an innocent party, and not engaged in the robbery or attempt to rob. It is necessary that you should have the law bearing upon that proposition. Then, again, because the other principle has been invoked, it is necessary that the court should give you the principles of law defining the right of the citizen to make an arrest, stating to you in what cases he can make an arrest, leaving it to you to make the application of whatever one of these principles you think, in your judgment, or according to the conclusion you may come to from this evidence, is applicable to the truth of the case. Now, first, as to the proposition or state of case where there is an agreement or conspiracy entered into by a number of persons to commit a crime or do an unlawful act, and in the course of the commission of it a person is killed, if the unlawful act or crime agreed to be done was dangerous to life, or likely to inflict great bodily harm upon the person or persons who were the ob-

jects of this crime, or it was homicidal in its character; that is, a crime which from its nature, and the way it was committed, jeopardizes the life of the party upon whom it was sought to be committed; from its nature and the way it was to be carried out or committed, or it was of a character that from the way it was committed it would likely inflict great violence upon the persons of those or of the one upon whom it was to be committed; I say when a number of persons have entered into an agreement to commit a crime of that kind, and they proceed to its accomplishment, and the crime is of that character that it will necessarily or probably require the use of force and violence which may result in the unlawful taking or endangering of life, because of the nature of the act and the way it is done,—every party to such an agreement who participates in the act that is sought to be done, which is the primary purpose of those who entered into it, such as robbery, every party, I say, who has entered into that agreement, and who enters upon the commission of the crime in the execution or commission of which the life of some one is taken, is responsible, or will be guilty of the crime growing out of the killing, although it may be done by one of the accomplices. Say, in this case, if the understanding upon the part of these three parties was to commit a robbery upon Dansby, or any of these men there, and in the execution of that agreement these two defendants were participants in that attempt to rob; that is to say, if they were present at that place, and were in any way aiding or assisting or counseling or abetting the robbery at that time, and some one of the three who had so conspired, so agreed together, fired a shot which took the life of Dansby, that shot would be the shot of all three; they would all three be responsible for it. Why is that so? The law used to be that if a number of persons agreed to do any unlawful act, and the life of an innocent person was taken by any one of those who had entered first into the agreement and upon the execution of that crime, although the act of killing might be collateral to the main purpose, that is, something that did not necessarily or naturally or probaby spring out of the execution of that purpose, they would all be responsible. And there is a case given away back in the reign of Charles II. (to illustrate this principle) of the killing of a chicken. Parties went out to rob a hen-roost—to steal a fowl—to steal chickens—a number of them—no purpose to kill—no design of that kind. One of them, for the purpose of getting the chicken with ease, fired upon it, and killed the owner of it in his yard, or place where they were seeking to get it. The courts at that time held them all responsible for that killing. The courts in this age, with a spirit of greater humanity, and greater justice, as I believe, draw this distinction: In a case of that kind all the parties would not be held responsible for that killing, although the act was unlawful. But if the act agreed to be done or entered upon by a number of persons is an act which, from its nature, and the way it is usually executed, would endanger human life by its execution, they are all responsible for the taking of that life, upon the principle that is self-evident in the law, and is founded in justice and reason, that every man who has arrived at the years of discretion must be

held to have intended the necessary, natural, or probable consequences of his acts. If a number of men agree to do an act which, from its nature or the way it is to be done, is an act that will put human life in jeopardy, then the putting of human life in jeopardy, or the destruction of human life, is a necessary and a natural and a probable consequence of the act agreed to be done by the party, and upon the principle of the law I have already announced to you it is but equal and exact justice that all who enter upon an enterprise of that kind should be responsible · for the death of an innocent person that transpires because of the execution of the enterprise then entered upon, and because that enterprise is one that would naturally and reasonably produce that result.

Now, the law defines the character of crimes that, when committed by a number of persons, all of such persons will be guilty of whatever crime results from the commission of the first offense. It says robbery is one of them. Why? Robbery has the very element that enters into it to distinguish it, to make it a crime, as that of violence upon the person; and it is a probable and natural and reasonable consequence of an attempt to commit that crime that a human life will be destroyed. The very demand of a man who robs, "Your money or your life!" implies that human life is in jeopardy, so that when a number of persons agree to, and enter upon the commission of, the crime of robbery, and a person is killed, who is an innocent person, in the execution of that purpose to rob, all the parties who have so entered into the agreement, and upon the execution of the purpose to rob, are equally responsible. The pistol or gun fired is the pistol or gun of each and every one of them. There are other crimes of a like character, and the law, I say, draws this distinction, and bases it upon a just ground. It says that any crime which, from its nature, and the way it is usually committed, will necessarily or probably or reasonably endanger a human life, is a crime that if a number of persons agree to commit and enter upon the commission of it will involve them all in the consequences that ensue. The commission of robbery is a crime that may cause the death of an innocent person. As I have told you, robbery is one of them, and arson is another. If a number of persons agree to commit arson, and go out and burn a house, from the nature of that crime and the way it is usually committed it necessarily endangers human life. Accounts are brought to us all the time of the destruction of life, by the firing of buildings, by the destruction of buildings, when the crime of arson is committed. Because of the nature of that crime, and from the very results that may be produced by it, that death may be produced as a natural and reasonable and probable result, all those who agree to commit it or enter upon its commission, or are engaged in its commission, if some one of them destroys life, as a natural and probable consequence of the act of arson they are all responsible for whatever crime grows out of the destruction of the life. The same with burglary. A number of persons agree to commit the crime of burglary. That is a crime which, from its nature, and the way it is committed, probably or reasonably or naturally jeopardizes life. So, when a number of persons agree to commit that crime and enter upon its commission, and an in-

nocent person is killed by one of the parties, it is the act of all. The same with the crime of rape. From its character, and the way it is committed, a human life is put in jeopardy. And when a number of persons agree to commit that and enter upon its commission, and a human life is destroyed, the destruction of that life, and the consequences of it, fall equally upon all. So you may take this character of crimes where the primary purpose, as in the case of robbery, is directly against the property of the man sought to be robbed, and in the crime of rape, the act is directly against the person sought to be raped, and in the crime of burglary where robbery is the prompting motive, and in the crime of arson where revenge is the motive which prompts the party to destroy the property of another, and because of their nature and the way they are committed,—from such a set of facts it arises as a reasonable and probable and rational conclusion that death is likely to be produced by them. All are held responsible for the consequences, if death be a consequence that grows out of the commission of an act of that kind.

Now, let us see what the decided cases say upon that. We first read what was decided in the case of *U. S.* v. *Ross*, 1 Gall. 624; 2 Crim. L. Mag. 487, note: "The case of *U. S.* v. *Ross* is frequently cited as supporting this doctrine" I have enunciated. "In that case, which was upon an indictment for being present, aiding and abetting in the murder of a colored man on board the American schooner Pocahontas, it appeared that the prisoner, with others, came on board the vessel, armed with muskets and other weapons, drove the crew below, wounded two persons, knocked down the mate, and killed the colored man." Their purpose was to capture the vessel, I suppose, as was frequently done at that time, and run it off into the slave trade, or into piracy. It was a very common thing even around our own coasts, not very many years ago, either, for men to watch their opportunity and capture vessels and run them off and use them as piratical crafts. · "There was no evidence as to who inflicted the mortal wound, but it was proved that the seizing of the vessel was by a preconcert, and with a determination to accomplish the result, whatever the consequences, and that the defendant was present when the killing took place, armed in the same manner as the others, and acting as their chief." The purpose was not to kill. That was not the primary purpose, but to seize the vessel; but the seizing of the vessel by violence and force was the doing of an act which would naturally or reasonably or probably produce death. For that reason all those who had entered into that preconcerted action, who had entered upon that wicked and unlawful enterprise of taking possession of that vessel, were held responsible for the death of the colored man. And here is what Judge STORY said about it:

"STORY, J., in his charge to the jury, said: 'In the present case the prisoner and his associates, if the evidence be believed, had entered into a most atrocious conspiracy, in which they were but too successful. The murder (for there can be no doubt it was such in some one of the party) was committed in the course of the execution of that conspiracy. It was a natural, though not a necessary, consequence of the attempt to execute it. The conspirators appeared to have armed themselves for the purpose of insuring success at all hazards.' It

is true that Judge Story, in another part of his charge, states the rule as to the responsibility of one for the acts of others, done in the prosecution of a common, unlawful design, in almost the same words as are used in *State* v. *Shelledy,* [8 Iowa, 477,] * * * but he adds: 'More especially will the death be murder if it happens in the execution of an unlawful design, which, if not a felony, is of so desperate a character that it must ordinarily be attended with great hazard to life, and, *a fortiori,* if death be one of the events within the obvious expectation of the conspirators.'"

Now, reading from the same author, 486, note, in the case of *Ruloff* v. *People,* 45 N. Y. 213, a case tried before the courts in New York, and finally appealed to the supreme court of New York; and the supreme court, in passing upon the question, said:

"If the homicide was committed by one of several persons in the prosecution of an unlawful purpose or common design, in which the combining parties had united, and for the effecting whereof they had assembled, all were liable to answer criminally for the act; and if the homicide was murder, all were guilty of murder, assuming that it was within the common purpose." "The evidence showed that the blow which caused the death was inflicted by one of three burglars while in the act of robbing the store; it was uncertain whether the accused actually inflicted the blow, and thus the question was raised as to his responsibility for such an act committed by one of his confederates. There was evidence from which to infer a purpose on the part of the burglars of resisting to the death any one who should oppose them, and the charge of the judge that such such an illegal purpose must have been formed before the actual commission of the offense, although not necessarily at the time when the parties went out with the common purpose of larceny, is held by the court to be a correct statement of the law."

Here is a case that was passed upon years ago by the supreme court of Illinois, in which a number of parties had burglarized a house in Chicago, stolen a lot of goods, and some of the parties—whether they had been in the burglary or not they were not able to say—but some of the parties took these goods and were starting towards a fence-house with them,—they call it in the city a "fence-house," a place where they receive stolen goods,—and while standing in front of that house unloading the goods they were interrupted by a policeman, that some one of them shot. The court, in that case, said it was not the act of all, because the fact of unloading these goods there at that place was not an act which naturally or reasonably or probably in its execution would jeopardize human life; but if it had been an act that did put human life in danger, then the principles of law that I have given you would have been applicable; and here is what the court declares the law to be:

"The principle which underlies and controls cases of this character is the elementary and very familiar doctrine, applicable alike to crimes and mere civil injuries, that every person must be presumed to intend and is accordingly held responsible for the probable consequences of his own acts or conduct. When, therefore, one enters into an agreement with others to do an unlawful act, he impliedly assents to the use of such means by his co-conspirators as are necessary, ordinary, or usual in the accomplishment of an act of that character. But beyond this his implied liability cannot be extended. So, if the unlawful act agreed to be done is dangerous or homicidal in its character, or if its accomplishment will necessarily or probably require the use of force or violence, which may result in the taking of life unlawfully,

every party to such an agreement will be held criminally liable for whatever any of his co-conspirators may do in furtherance of the common design, whether he is present or not." *Lamb* v. *People*, 2 Crim. L. Mag. 472.

Now, you pass upon the question as to whether or not the purpose to rob is a crime that is committed by force and violence, and when attempted the exercise of force and violence is necessary to consummate it. That is one of the very ingredients of that crime. Then, is it an act of that character which may result in the taking of life unlawfully, or which would be dangerous to life? If so, it would be homicidal in its character. Or would the accomplishment of that crime necessarily require the use of force, and that force so used as to jeopardize human life? If so, it is the doing of an act that puts human life in danger, and which puts it in danger as a natural or probable or reasonable consequence of the act agreed to be done. And I repeat again that if the evidence shows in this case that there was a purpose entered into by these two defendants, together with Davis, to enter upon the crime of robbery upon Dansby, or any of these parties at that place,—I say any of them because Dansby had a right to defend the others, or the others had a right to defend him as against a crime of that character,—if they had agreed to enter upon a crime of that kind, and had gone to the place where the attempt was made to commit it, and were in the act of committing it, and in the course of the commission of that act some one of the party fired the shot which took the life of Dansby, that shot was the shot of all; and in such a case as that, if the evidence shows that state of facts, you have that which shows premeditation, you have that which shows deliberation, you have that which shows a purpose that was conceived and matured beforehand, to do an act which was naturally and probably dangerous and deadly in its character, to take the property of these men, or of a man, from his presence or from his person, by the exercise of violence. That is the crime of robbery. Now, the converse of that proposition I have given you as recognized by the supreme court of Illinois, and is justly recognized where the unlawful act agreed to be done is not of a dangerous or homicidal character, and its accomplishment does not necessarily or probably require the use of force or violence which may result in the taking of human life unlawfully. No such criminal liability will attach merely from the fact of having been a party to such an agreement. That would repudiate the doctrine enunciated in the old English case, where a party went out to steal chickens, because the stealing of a chicken is not a thing that necessarily or naturally or probably, from the way it is executed, would jeopardize a human life. But if it is a demand made upon a person for his money, whether that demand is made in words, or made by an act of violence, or attempted violence, that presents a state of case where the crime attempted is very different, because in the first case named (of the stealing of the fowl) the killing would be collateral to the purpose to steal, and in the case of robbery the killing is an act that naturally and reasonably and probably springs out of the purpose to rob, and all who agree to enter upon that robbery, and who are present at the place where it is being committed, or at-

tempted to be committed, while the parties are in the act of committing it, they are aiding, and assisting and counseling and abetting in its commission, and are responsible for the crime growing out of that robbery which may result in the taking of human life. And I repeat that the fact that the robbery is being committed, and if a human life is taken in the commission of it, shows deliberation, shows premeditation, shows that state of case that exhibits that it was thought of beforehand, so as to bring into existence malice aforethought. That doctrine has been recognized, when it comes to statutory crimes, by all the states, where they say by their respective statutes that he who kills in an attempt to rob, to commit arson, to commit rape, or burglary, or any of these high crimes, is guilty of murder; that whenever the proof shows that fact they but show a state of case that under the law that is administered here is a state of case which evidences deliberation, premeditation, and shows the existence of malice aforethought, and consequently the existence of murder. Now, that is the principle that has been invoked upon the part of the government. You are to take it; you are to find out what the truth of the case is, and to apply it to that truth that fits it. If it does not because that is not the truth of the case, that state of case is not made by the evidence; the principle becomes inapplicable. The other principle invoked is that these parties were attempting to arrest these defendants for the sake of a reward. Now, there is a right in the hands of the citizen to make an arrest of another citizen; but before that right can be executed certain conditions must be proven to exist. In the first place, it must be proven that the parties sought to be arrested were guilty of a crime, such as robbery. If the proof shows that prior to that time these two defendants, together with the other party, had been over here and robbed Rigsby, (this man who testified here, this witness who was here,) that the crime of robbery had been committed, that a crime had been committed such as would give a private citizen the right to arrest the party who had committed it, that is the first proposition that must be proven to exist by the testimony before a private citizen can make an arrest even for a high crime,—that a crime such as he seeks to make the arrest for had been committed by some one. That must be shown as a proposition that is true. Then, that he who is seeking to make the arrest must have reasonable ground to believe that the person he is seeking to arrest was the party who committed that crime. First, a crime must be shown to have been committed. Then it must be proven that the parties who sought to make the arrest had reasonable ground to believe that the parties they were seeking to arrest were the ones that committed that crime. If that set of facts is proven, any private citizen has a right to make the arrest. That is the law, and it is the law that puts a power in the hands of the citizen for the protection of himself and other citizens.

First, a crime must be proven. Then the party seeking to make the arrest must have reasonable ground to believe that the person he is seeking to arrest is the party who is guilty of that crime. If so, he can proceed to make the arrest. Now, a word as to the manner in which that power shall be executed. The law defines the manner

that power shall be exercised as clearly as is possible to be done, both by officers and citizens. When a citizen seeks to make an arrest, and the proof shows a crime has been committed, and the reasonable ground to believe that the party he is seeking to arrest is the one guilty of it, if it is possible to do so with due regard to his own safety, he is required to make himself known and his mission known, but he has a right, just as the officer has, to stand upon the principle that he is to seek his own safety and his own protection, and if, when he is seeking to make the arrest or proceeding to do so, the opportunity to make his mission known is cut off by a deed of actual or threatened violence upon the part of the person he is seeking to arrest, then the fact that he does not make known who he is and what his mission is before the party who cuts him off from the privilege or opportunity of making known his purpose, and who he is, does not deprive him of the right, if he is lawfully proceeding upon that mission, to stand upon the defensive and seek his own protection all the time. If he is fired upon, or an attempt made to fire on him, when he has that purpose in view, before he is enabled to make the purpose known, he is thereby cut off from proclaiming his object by an act of violence or threatened violence, and he can stand upon the defensive because he is in the right, he is in the execu-tion of a lawful power; and he who so acts violently, or by such attempted violence, is to blame. When he is seeking to execute that power in that way under the facts I have enunciated, which give him the right to execute the power, those who resist are in the wrong, and if they kill those who are seeking to arrest them, or any one of them, they are guilty of the crime of murder, if the party seeking to make the arrest is proceeding in the way I have named, which is recognized by law as a legal and proper method of seeking to make an arrest. Now, that is the principle bearing upon that doctrine of the law that has been invoked in this case. You are to see whether that is the state of case that exists here. If so, you are to make the application of the principles of law to that state of case if it is proven. Now, again. There are two parties charged with this crime. It is necessary, therefore, that I should briefly give you the principles of the law showing how more than one person may commit a crime. I have already given to you a state of case which shows how more than one person may commit it. When they have agreed to enter upon the commission of a crime which necessarily or probably endangers human life in its commission, whenever they agree to enter upon it, and do enter upon the commission of a crime of that kind, and are present at the place in the execution of the purpose of robbery, they are all present aiding and abetting in the act of killing. The law says that those who participate, those who with their own hands, or with his own hand, does an act which is a crime, that he is responsible for this act. It says further all those who are present at that place, and are participating in that which produces the result, whether the primary purpose was to bring about that result, or the primary object was to do something else which would naturally produce such a result, are responsible. All persons who are present at the

time of the commission of a crime are principals, although only one committed the act, provided all are proven to have confederated and engaged in a common design of which the perpetration of the crime is a part. I will read from 6 Crim. L. Mag. page 351, note:

"All persons who are present at the time of the commission of a crime are principals, although only one committed the act, provided all are proven to have confederated and engaged in a common design of which the perpetration of the crime is a part. This doctrine of criminal combination is firmly established in our criminal jurisprudence, and the cases furnish numerous illustrations. All are held responsible, because the will of each individual contributed to it; each intended that the crime should be perpetrated. Thus, in *Green* v. *State*, [13 Mo. 383,] two confederated to commit a murder. Only one did the killing. The other being present, he was held equally guilty. What, in the sense of the law, is meant by being present, aiding and abetting, is thus stated in Foster's Crown Law. That when the law requires the presence of the accomplice at the perpetration of the fact in order to render him a principal it does not require a strict, actual, immediate presence, such a presence as would make him an eye or ear witness of what passeth. Several persons set out together, or in small parties, upon one common design, be it murder or other felony, or for any other purpose unlawful in itself, and each taketh the part assigned him; some to commit the fact, others to watch at proper distances and stations to prevent a surprise or to favor, if need be, the escape of those who are more immediately engaged. They are all, provided the fact be committed, in the eye of the law, present at it; for it was made a common cause with them, each man operating in his station at one and the same instant, towards the same common end, and the part each man took tended to give countenance, encouragement, and protection to the whole gang, and to insure the success of their common enterprise."

So that all those who are present at the place where the killing transpired, either in the execution of a direct purpose to kill, or in the execution of a purpose to rob, out of the attempt to execute which purpose grows a killing, then they are all present, provided they are there in pursuance of a previous understanding to engage either directly or immediately in the killing or in the act of robbing. Now, that, of course, implies a previous agreement entered into beforehand. That, as I have told you, is called a "conspiracy," an agreement either expressly or tacitly entered into to commit an unlawful act, in this case to commit the crime of robbery. That, of course, can only be proven as a rule by circumstances, because when it exists it is something that is confined to those who enter into it. They do not proclaim their purpose upon the house tops, they do not call in a number of jurymen to witness the act that they may pass upon it; they do not make it known to anybody outside of the confederates,—and the only way you can ascertain the existence of a wicked undertaking or agreement such as is named a "conspiracy" by the law, is to drag it to the light of day by circumstances. The association of the parties together, the fact of their participation in a common design, the fact of their being associated together at that place, and being there all at that time, are facts and circumstances that may be taken into consideration to show this undertaking that was entered into by them. It is not necessary to show it was entered into by so many formal words. It may be tacitly entered into. If a man, with

the understanding that another purposes to rob a third, joins him, goes to the place where the attempted robbery is made, and is there for the purpose of aiding him, he agrees to it just as much as though he had entered into an obligation in writing to assist him. It is an agreement in the law. That is the way you are to find it, by the relation that apparently the parties bear to each other, by their being there at the place, by their participating in the common enterprise, by their attempt to participate in the common enterprise. All these things are to be taken into consideration by you for that purpose. Now, it becomes necessary for the court to remind you of what figure these other crimes that have been proven cut in the case. This crime of the robbery of Rigsby may be taken into consideration by you in passing upon the question of the identity of the defendants. It is a competent fact for that purpose. You will remember that the evidence shows that goods were found upon the person of one of these parties who was present at this ferry when the killing of Dansby took place, that were sworn to by Rigsby as having been taken by the three parties, the man Davis, or Myers, and these two defendants, from his store. That would be evidence that might be taken into consideration with the statements of these colored witnesses, who were present at the time, and undertook to point out and identify these defendants. That may be taken into consideration for that purpose. If you believe in the theory that there was an attempt made to arrest upon the part of these parties, and that the attempt was not made by these defendants together with Davis to commit a robbery upon them, then the fact that the robbery of Rigsby had transpired, and the robbery of Taylor and these other robberies that have been proven before you, may be taken into consideration to show that crimes had been committed that would give the citizen the right to make an arrest, provided there was reasonable ground to believe, in your judgment, at the time, that the parties they were seeking to arrest were the ones that had committed those crimes. They may be taken into consideration for that purpose. You are not to consider these other crimes as make-weight against the defendants alone; that is to say, you are not to convict the defendants because of the commission of these other crimes. They were admitted for the specific purposes that I have named. They are not to influence your minds so as to induce you to more readily convict them than you would convict them if the crimes had not been proven against them. That is the figure they cut. That is the reason they were admitted as testimony before you.

Now, gentlemen, I have given you the principles of law defining this crime of murder. I have given you the law telling you in what cases all who are participants in the commission of some other crime would be held responsible for a murder growing out of that crime. If it is the crime of robbery that was entered upon, and they were all participants according to the law I have given to you making parties participants in that crime, in the attempt to consummate it, and while that attempt was being made, or the purpose was being executed, Dansby was killed, why the pistol was held in the hands of all, and the bullet fired from that

pistol or gun (whichever it may be) was the bullet of all, and they are all equally responsible in a case of that kind. You are to learn from this evidence what the truth of the case is. You are the judges of the credibility of the witnesses. You have positive eye-witnesses to this occurrence, persons who were present at the time it transpired,—at the time Dansby was shot. You take the testimony of these witnesses; you see whether it is reasonable, whether it is probable in its own light and in the light of the other evidence; and, as the facts were called out upon examination of the witnesses by defendants' counsel, it is perfectly proper and right when that is the case for you to take into consideration the statements made by these witnesses at or about the time of this occurrence, either in contradiction of what they testified to upon the stand or in corroboration of what they stated as witnesses, if they made the same statements upon the stand as made by them after the occurrence as to why or how this thing transpired, why these always are proper, having been called out in that way, to be taken into consideration by you as corroborative facts of what they said upon the stand. If the converse is true, and they made statements that were contradictory in substantial parts as to what the purpose of the parties was, and what they were doing at the time Dansby was killed, why you have a right to take that into consideration as contradicting them. If you are satisfied from the whole of this testimony beyond a reasonable doubt of the guilt of these defendants of the crime of murder, your duty is to convict; and, if so, you will convict them. You will say that "We, the jury, find the defendants guilty of murder as charged in the first count of the indictment." If you are not so satisfied, that is, satisfied beyond a reasonable doubt, your duty is to acquit them. And you must be satisfied beyond a reasonable doubt as to all of them before you convict them. If you are not satisfied as to all, then your duty would be to acquit the one of whose guilt you are not so satisfied.

Now a little further as to this rule that says you must weigh the credibility of the evidence. You must pass upon the amount of credit you will attach to every fact. You must do that before you can say whether the facts are sufficient to prove a proposition is established as asserted. That requires you to look at the testimony of each and every witness in its own light, and in the light of the other facts. You consider the relation that the witnesses bear to the case, and the interest they have in the result of the case. If they are to be affected seriously by the result of the case, by the verdict, as is Stanley in this case, why then, in passing upon Stanley's evidence, you are to consider that relation that he bears to the case. The highest interest and greatest interest a man has in this life is the interest he has in his own life. He will make a greater sacrifice to preserve that than he will any other right that belongs to him. That is human nature, applicable to all of us. When you are passing upon the testimony of a witness so situated as that his life is being weighed in the balance, if you would do justice, you must pass upon his statement in the light of the attitude he bears; in the light of the interest he has to make state-

ments of a certain character in the case; in the light of the motive that may prompt him or influence him to make statements that would control you or influence your minds in his favor. Now, you weigh his evidence in that way, and you weigh it again in the light of the other evidence in the case. If the other evidence contradicts him, why it weakens his evidence to the extent that you attach credit to the contradicting facts. If it corroborate what he says, why it is strengthened as you may attach credit to the corroborating facts. You will understand that under the law you are not to draw any inference against the other defendant, Boyd, because he did not go upon the stand. The law says that you shall not draw any inference against him for that reason. You have a right to draw an inference against a man if the proposition is reasonably established against him, or a presumption is created by other facts. If he has the means reasonably at hand outside of his own testimony of refuting that presumption and overthrowing it, and he does not do it, that creates a presumption against him, but he may go upon the stand or not, as he pleases. If he does not choose to go upon the stand, you cannot draw any inference against him because of that. What inferences you may draw against him must come to your minds from the other testimony in the case, and not from his failure to go upon the stand. Now, gentlemen, you will take all this evidence, you will take these rules of law I have given you, and if, when you have considered the evidence, and found what you believe to be the truth of the case, and when you make the application of the principles of law to that truth and that result is produced by that action on your part is a result that fastens upon your minds a well-grounded belief that there is guilt, and guilt of murder here as charged, your duty would be a convict, because in such a case as that you as reasonable men outside of the jury-box, as reasonable and just and impartial citizens, looking into the truth or falsity of a charge preferred against another citizen, when the proof carried your minds that far, would believe the charge, and you would act upon that belief. That is what is said by the law to establish the case to such an extent as to satisfy the minds of reasonable men so that they are convinced beyond a reasonable doubt. That is what is meant by proving a case beyond a reasonable doubt. It does not mean to prove it beyond any doubt, that it must be demonstrated absolutely, so that there is so cavil or conjecture or surmise or no possible doubt that can be arrayed against the conclusion. There is no conclusion that a man ever arrives at that there is not some sort of doubt that may be arrayed against it. But reasonable men pay no attention to that kind of a doubt. They are not influenced by such doubts. They must be such doubts as that reasonable men permit their minds to be influenced by them. So, if the case is proven so that it can be recognized and known by you as being established to that degree of moral certainty that you would be satisfied of the truth of it as citizens, if it is proven so that you can say that it is established beyond a real substantial doubt, your duty is to convict. If not, if there is a real substantial doubt of guilt in the case, your duty is to regard that doubt, and act upon it, and acquit upon it. That

means a real, substantial doubt of guilt, flowing naturally and reasonably to your minds from the evidence in this case, viewed in the light of the law that may be applicable to the truth of the case, and leaving your minds in that condition that you are not able to say you have an abiding conviction to a moral certainty of the truth of the charge. If your minds are in that condition, then there is no guilt established. If they are carried beyond that by the proof in this case, and by the law applicable to the truth of it, then they are in the field of conviction and belief; then the case is established.

I submit the case to you. It is one of great magnitude, great importance. I ask you to do that equal and exact justice that you are commanded by the law of your country, by the mandate of that law, by the oath you have assumed. I feel satisfied in submitting it that you will do that equal and exact justice that ought to be done by honest and impartial citizens, sitting in the jury-box. Gentlemen, you have the case.