BAILEY *et al. v.* SUNDBERG.[1]

*(District Court, S. D. New York. June 26, 1890.)*

1. JUDGMENT IN REM—RES JUDICATA—QUESTION NECESSARILY INVOLVED.
    In a suit *in rem* before a court of competent jurisdiction, fairly prosecuted, all persons having an interest in the subject-matter, and their privies, are deemed parties, and are bound by the decree, both as respects the *res* itself, and the questions necessarily involved in the adjudication.

2. SAME—LIBEL FOR COLLISION—SUIT AGAINST MASTER IN PERSONAM.
    Hence, where owners of a vessel brought suit *in rem* against a steam-ship, alleging that the steam-ship had negligently collided with and sunk their vessel, and on the trial the court found that there had been no collision between those two vessels, which decision was affirmed by the appellate court, and subsequently the owners, joining with themselves an insurance company, brought suit against the master of the steam-ship, to recover the same damages, nearly six years after the alleged collision, it was *held,* that the question of the negligence of the master was *res adjudicata,* and that the suit should not be entertained.

3. SAME—PARTIES—ALL HAVING LIEN ON RES.
    In a suit *in rem* for damages caused by collision, all persons having a lien on the *res,* growing out of such collision, are deemed parties to the suit, and are bound by the decree.

In Admiralty.

Action against the master of the steam-ship Newport to recover damages for the sinking of the schooner John K. Shaw, alleged to have been caused by collision with the Newport.

*Geo. A. Black,* for libelants.

*Goodrich, Deady & Goodrich* and *R. D. Benedict,* for defendant.

BROWN, J. On the evening of February 23, 1884, the libelants schooner John K. Shaw was sunk and wrecked off the Jersey coast, and all on board lost. On the 24th of April following the owners of the Shaw filed in this court their libel *in rem* against the steamer Newport, alleging that the Shaw had been sunk through collision with the Newport, and claiming upwards of $20,000 damages. The case was prosecuted in this court with most elaborate care, and a decree rendered that the Newport did not collide with the Shaw, and the libel was accordingly dismissed. 28 Fed. Rep. 658. On appeal to the circuit court, the case was again elaborately considered, and upon additional evidence for the libelants, and the decree of this court was affirmed. 36 Fed. Rep. 910. A rehearing was afterwards had in the circuit court, and further testimony offered, and the decision reaffirmed. Id. 913. On the 5th of February, 1890, the owners of the Shaw filed the present libel for the recovery of the same damages against the defendant, John P. Sundberg, *in personam,* as master of the Newport, joining with them as co-libelants the insurers of the cargo, who claimed $3,000 more for the loss of coal on board. The defendant pleads *res adjudicata.* I am of the opinion that the plea of *res adjudicata* is good, and must prevail as against both libelants. In a suit *in rem* before a court of competent jurisdiction, fairly prosecuted, all persons having an interest in the subject-matter, and their privies, are

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

deemed parties, and are bound by the decree, both as respects the *res* itself, and the questions necessarily involved in the adjudication. 1 Greenl. Ev. §§ 522, 525. Freem. Judgm. § 615; 2 Smith, Lead. Cas. 750; per Lord KENYON in *Geyer* v. *Aguilar*, 7 Term R. 696. In *Gelston* v. *Hoyt*, 3 Wheat. 246, the question was elaborately examined by the supreme court of the United States. There a vessel had been seized by the collector for a supposed violation of the neutrality laws. A suit for her condemnation was thereupon instituted in the name of the United States *in rem* against the vessel, and upon the trial it was adjudged that there was no cause of forfeiture, and the vessel was acquitted. In a subsequent suit against the collector in trespass, brought by the owner of the vessel, the former adjudication was held conclusive that there was no cause of forfeiture. In pronouncing judgment, STORY, J., says, (pages 312, 313, 317:)

"If a sentence of condemnation be pronounced, it is conclusive that a forfeiture is incurred; if a sentence of acquittal, it is equally conclusive against the forfeiture; and, in either case, the question cannot be litigated in another forum. This was the doctrine asserted by this court in the case of *Slocum* v. *Mayberry*, 2 Wheat. 1, after very deliberate consideration, and to that doctrine we unanimously adhere. The reasonableness of this doctrine results from the very nature of proceedings *in rem*. All persons having an interest in the subject-matter, whether as seizing officers or informers or claimants, are parties, or may be parties, to such suits, so far as their interest extends. The decree of the court acts upon the thing in controversy, and settles the title of the property itself, the right of seizure, and the question of forfeiture. If its decree were not binding upon all the world, upon the points which it professes to decide, the consequences would be most mischievous to the public. In case of condemnation, no good title to the property could be conveyed, and no justification of the seizure could be asserted under its protection. In case of acquittal, a new seizure might be made by any other persons, *toties quoties*, for the same offense, and the claimant be loaded with ruinous costs and expenses. * * * It cannot be pretended that a new seizure might, after an acquittal, be made for the same supposed offense; or, if made, that the former sentence would not, as evidence, be conclusive, and, as a bar, be peremptory against the second suit *in rem*."

The same general doctrine was asserted in the case of *The Apollon*, 9 Wheat. 362, where a similar suit in trespass was brought by the master of a vessel previously seized against the collector; and the court again held that the acquittal in the suit was conclusive evidence in every inquiry before every other tribunal that there was no cause of seizure.

These principles seem to me applicable to the present case, as respects the adjudication that there was no collision with the Newport. The conclusiveness of a former adjudication may apply to the whole cause of action, or only to some question arising on the trial. In this case, the former adjudication, that there was no collision with the Newport, if binding upon the libelants, leaves them no possible cause of action. *Cromwell* v. *County of Sac*, 94 U. S. 351. If there was any such collision by the Newport's fault, all the libelants had a direct legal interest in the *res*, which was the subject of the former suit, because all had a lien upon the ship for their damages. That suit

being *in rem*, all persons having such an interest are deemed parties to the suit, and are bound by it. All, under the practice in admiralty causes, had a right to come in and be heard upon the trial. Had the vessel been condemned in the former suit, and sold, either before or after decree, and the proceeds brought into court, the present insurers, if they came in before a final decree, would have shared equally in the distribution of the fund; or, if after a decree, they would have been entitled to claim any surplus remaining. In either of such proceedings by the insurers, neither the question of collision nor of the Newport's fault, after an adjudication against her in the suit *in rem*, could have been again litigated. The former adjudication would have been binding in their favor, both as to the fact of collision and as to her fault; and, if conclusive in their favor, it must be equally conclusive against them that there was no collision, when such was the former adjudication. The insurers are therefore concluded as much as the former libelants.

The fact that the present suit is against the master *in personam* does not render the former adjudication any the less binding. As respects responsibility to third persons for collision, the relation of the master to the ship is not merely a relation of ordinary "privity," but one of substantial identity. The owners might not be liable, though the ship were held; for the ship might have been sailed by charterers. But the liability of the ship and of the master is identical; they are convertible terms. That is probably why both ship and master, under rule 15 of the supreme court, may be co-defendants in collision cases. By the practice of most maritime countries in admiralty causes, the naming of the ship alone as a defendant is unknown. The suit in proceeding against foreign ships is against the master also, in his character as master. Ord., etc., 1681, lib. 1, tit. 14, arts. 2, 3; Code, etc., Commerce, §§ 200, 201; 1 Valin, Com. Sur. L'Ord. 343, 345. A judgment in such a suit binds the ship, whenever the ship is legally held for the master's acts. So when, under our practice, the ship is seized *in rem*, and taken from the master's possession for alleged negligent navigation by the master, and the master had knowledge of the suit, and is a witness in the cause, as in this case, how can it be said that he is not in privity with the ship, or with the suit in which the ship is sought to be held solely for his acts as master? He is at liberty to defend equally with the owners. In a foreign port, he is bound to defend. He is treated by the maritime law, not as an agent only, but, says Story, (Agency, § 116,) as "in some sort and to some extent clothed with the character of a special employer or owner of the ship, and as having a special property in it." There is no reason, therefore, why the master should not be bound by such an adjudication *in rem* as respects his acts which involve the ship as much as the owner is bound. There is no question that the general owner in this case, who defended the former suit, would be protected by that adjudication against any such suit *in personam* as this. See *The Jessie Williamson, Jr.*, 108 U. S. 305, 311, 2 Sup. Ct. Rep. 669. It is immaterial whether the defense to the suit *in rem* is made by the master, as the special owner, or by the

general owners, when both have knowledge of the litigation and the means of taking part in it. In the court of errors, in *Gelston* v. *Hoyt*, 13 Johns. 580, Chancellor KENT held that the officers by whose procurement the original seizure was made were not strangers, but privies to the subsequent suit *in rem* to enforce a forfeiture brought by the United States. The privity here is much closer; for it is the master's acts alone that are concerned; and, as I have said, the liability of ship and of master is identical, and he is bound to indemnify the owners. I have no doubt, therefore, that the master would have been bound by an adjudication in the former suit that he did collide with the Shaw, and he is consequently entitled to the benefit of the adjudication of acquittal. In the present case, the owners of the Shaw have had their day in this court, and upon appeal. The maxims that no one shall be vexed twice in the same matter, and that it is the interest of the state that there shall be an end of litigation, apply with special emphasis.

The policy of the admiralty law and practice, sanctioned by the supreme court in its adoption of the 59th rule in admiralty, (see *The Hudson*, 15 Fed. Rep. 162,) furnishes an additional reason why this court should refuse to entertain what, in substance and effect, is but a new trial of an old adjudicated issue. If, after such full and exhaustive hearings in a suit *in rem* as have been had in this case, any other person who may claim to have been damaged by the same collision, such as any part owner of the vessel injured, not an actual party to the record in the former case, or any one of a score of owners of different parts of the cargo, could bring a new suit, and try the whole question of the collision *de novo*, there would be no end to trials and retrials of the same issue short of the period of limitation, if there were any such definite period in admiralty. There is no such definite period of limitation in admiralty causes, but only that full and reasonable opportunity for the enforcement of demands that common justice and equity require. *The Nestor*, 1 Sum. 85; *The Bristol*, 11 Fed. Rep. 163, and cases there cited.

Upon the merits of the present case, there is no pretense that there has not been the fullest opportunity for the presentment of the insurers' claim, as well as that of the owners of the Shaw, in the former litigation. The insurers doubtless voluntarily awaited its result; and in that case they are equitably, as well as legally, concluded by it.

So far as I apprehend the nature of the new evidence desired to be offered, it does not differ in kind from what was previously produced. There is no peculiarity in the case that can be taken to distinguish it from so many others in which the defeated party finds, after one or more hearings, that there is additional evidence on one or more points, which might be produced. No precedent in the admiralty is cited for such a suit as the present after such a previous adjudication. To entertain this suit would evidently involve, not merely a great change in the practice hitherto as to collision causes, but greatly extend the scope of litigation, which it has been the aim of the courts to diminish. Rule 15 of the supreme court in admiralty, which states against what parties suits for collision may be brought, permits libels against the ship and master,

against the ship alone, or against the master alone, or the owners alone. Though under this rule contemporaneous or successive different suits may be brought against the different defendants named, so far as may be necessary to procure satisfaction of a legal demand, (*The Normandie*, 40 Fed. Rep. 590, and cases there cited,) in my judgment it was not the intent of this rule to admit of any such successive suits against the different defendants named after an adjudication *in rem*, upon a full and impartial hearing, that there was no such collision as alleged; but the opposite intent should rather be inferred. On these several grounds the exceptions to the plea of *res adjudicata* are therefore overruled.