## HAMBURG AMERICAN STEAMSHIP COMPANY *v.* GRUBE.

### ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 411. Submitted January 16, 1905.—Decided February 20, 1905.

The agreement of September 16, 1833, between New York and New Jersey, confirmed by act of Congress of June 28, 1834, 4 Stat. 708, did not vest exclusive jurisdiction in the Federal Government over the sea adjoining those States, neither of which abdicated any rights to the United States.

Although when the charge of the state court is not before this court, and the record contains no exception to any part of it, the verdict and judgment must be held to have been rendered according to law, nevertheless, if a provision of the Federal Constitution was properly invoked the motion to dismiss may be denied.

The act of the legislature of New Jersey of March 12, 1846, under which the jurisdiction of the United States over Sandy Hook is derived is merely one of cession and does not purport to transfer jurisdiction over the littoral waters beyond low water mark.

THIS action was brought in the Supreme Court of New York by Minnie Grube, as administratrix of John Grube, against the Hamburg American Steamship Company, to recover damages for his death, under the statute of New Jersey in that behalf, occasioned by the sinking of the James Gordon Bennett, a vessel owned by a New Jersey corporation, by the steamship Alene, belonging to the steamship company. There was a conflict of evidence as to the place of the collision, evidence being given on the one hand that it occurred in waters beyond the three-mile limit of the coast of the State of New Jersey, and, on the other, that it occurred within the three-mile limit along that coast.

The record discloses no instructions to the jury requested by defendant below, and no exceptions were taken by it to the charge of the court, which was not included in the bill of exceptions or case made.

Defendant moved the court to direct a verdict in its favor
upon the following grounds:

"Defendant claims the right, under the statute of the United
States confirming and approving the agreement as to bound-
aries between the State of New York and the State of New
Jersey, to be free in navigating the main sea to the eastward
of Sandy Hook peninsula, from the operation of any law of
the State of New Jersey giving a right of action for injuries
causing death, and claims that under the statutes aforesaid,
the jurisdiction of that State extends only to the main sea;
that is to say, low water mark along its exterior coast line
and to a line drawn from headland to headland across the
entrance to the bay of New York. It, therefore, asks the
court to direct the jury to return a verdict for the defendant,
on the ground that it appears by uncontradicted evidence
that the collision between the steamship Alene and the schooner
James Gordon Bennett, to recover damages for which this
suit is brought, occurred upon the main sea and to the east-
ward of the Sandy Hook peninsula, and at a distance of more
than a mile to the eastward of low water mark upon the
exterior line thereof.

"Defendant claims the right, by reason of the purchase by
the United States of the Sandy Hook peninsula, and the
cession to the United States by the State of New Jersey of
jurisdiction over the same and the long continued use of that
peninsula, and of the main sea to the eastward of it for military
purposes, to be free in navigating the main sea to the eastward
of that peninsula from the operation of any law of the State
of New Jersey, giving a right of action for injuries causing
death, and claims that the main sea to the eastward of said
peninsula to a distance of three miles from the shore is subject
to the exclusive jurisdiction of the United States. It, there-
fore, asks the court to direct the jury to return a verdict for
the defendant on the ground that it appears by uncontradicted
evidence that the collision between the steamship Alene and the
schooner James Gordon Bennett, to recover damages for which

this suit is brought, occurred upon the main sea and to the eastward of the Sandy Hook peninsula, and at a distance of more than a mile to the eastward of low water mark, upon the exterior line thereof."

The court denied the motion and defendant excepted. The jury found a general verdict for plaintiff below, and assessed the damages. Judgment was entered thereon, which was affirmed by the Appellate Division of the Supreme Court, and a writ of error from the Court of Appeals was denied. This writ of error was then allowed, and the case submitted on motions to dismiss or affirm.

*Mr. Everett P. Wheeler* for plaintiff in error:

The effect of the statutes and deeds was to vest in the United States title in fee to Sandy Hook and exclusive juris- diction over it. All the prerequisite conditions were complied with. As to the effect of jurisdiction of the United States over lands ceded by the States see Story, Const. § 1227; *In re Ladd,* 74 Fed. Rep. 31; *United States* v. *Tucker,* 122 Fed. Rep. 518; *Commonwealth* v. *Clary,* 8 Massachusetts, 72; *United States* v. *King,* 34 Fed. Rep. 302. As the States have no longer legislative power over military tracts, so their inhabitants have none of the rights of citizens of the States to which they originally belonged. *Sinks* v. *Reese,* 19 Ohio St. 306; Opinion of the Justices, 1 Metc. (Mass.) 580; 6 Op. Atty. Gen. 577; *United States* v. *Carter,* 84 Fed. Rep. 622.

The jurisdiction over Sandy Hook acquired by the United States included the littoral waters lying to the eastward. Such waters within three miles are subject to the jurisdiction of the sovereign. Wheaton Int. Law, § 177; Dana's note to same (105), citing Bynkershock; Pomeroy on Int. Law, § 144; 1 Hautefeuille, Droit des Nation Neutres, 53; *Ex parte Tatem,* 23 Fed. Cas. 708. Jurisdiction over these waters is vital to the United States and a matter of indifference to New Jersey, and to realize the object of the cession control of the waters is essential and when the use of a thing is granted everything

is granted by which the grantee may have and enjoy the same.
Kent's Comm. 467, note *g; United States* v. *Appleton,* 1 Sum-
ner, 492; *Potter* v. *Boyce,* 73 App. Div. N. Y. 383; *S. C.,* 176
N. Y. 551; *Huttemeier* v. *Albro,* 18 N. Y. 48; *Richardson* v.
*Bigelow,* 15 Gray (Mass.), 154; *Voorhees* v. *Burchard,* 55 N. Y.
98; *Simmons* v. *Cloonan,* 81 N. Y. 557; *Middleton* v. *La
Compagnie, &c.,* 100 Fed. Rep. 866, distinguished.

The effect of the transfer of jurisdiction over Sandy Hook
and the adjacent waters was to deprive New Jersey of power to
legislate for that region, and the death act of that State,
passed subsequent to the cession, has no operation there.
Before the cession, Sandy Hook was subject to the common
and statute law of the State of New Jersey. The cession did
not *ipso facto* abrogate this body of law, for it is well recognized
that change of sovereignty over territory does not *ipso facto*
work a general change of the law then existing. Halleck
Int. Law, ch. 34, § 14; *Am. Ins. Co.* v. *Canter,* 1 Pet. 511, 542;
*Commonwealth* v. *Chapman,* 13 Metc. (Mass.) 68; *Chappell* v.
*Jardine,* 51 Connecticut, 64; *Chi. & Pac. Ry. Co.* v. *McGlinn,*
114 U. S. 542; *Barrett* v. *Palmer,* 135 N. Y. 336; *Madden* v.
*Arnold,* 22 App. Div. N. Y. 240. The act of cession was in 1846.
The statute giving a right of action for death by wrongful act
in 1848. This act is no more operative upon the Sandy Hook
peninsula than legislation of the State of Maryland enacted
after the cession of the District of Columbia is operative in
that District.

Such a cession severs the territory ceded from all further
political relations with the State of which it was formerly a
part. Thenceforth all legislation must be by the new sover-
eign. *In re Ladd,* 74 Fed. Rep. 31; *Mitchell* v. *Tibbets,* 17
Pick. (Mass.) 298; *Commonwealth* v. *Clary,* 8 Massachusetts,
72, *Contzon* v. *United States,* 179 U. S. 191.

The proviso in the New Jersey act as to retention of juris-
diction in certain cases contains nothing at variance with this
proposition. *Ft. Leavenworth R. R. Co.* v. *Lowe,* 114 U. S.
525; *United States* v. *Cornell,* 2 Mason, 60; *United States* v.

*Meagher,* 37 Fed. Rep. 875; *Lasher* v. *Texas,* 30 Tex. App. 387; *United States* v. *Hammond,* 1 Cranch. C. C. 15. The New Jersey laws referred to in the proviso then in operation were laws then in force and not those subsequently passed. *McConihay* v. *Wright,* 121 U. S. 201; *Morris Canal Co.* v. *The State,* 24 N. J. Law, 62; *Griswold* v. *Dock Co.,* 21 Barb. (N. Y.) 225.

Under the Act of Congress ratifying the boundary agreement between the States of New York and New Jersey, the boundary of the latter State extends only to the main sea,— that is to low water mark along the coast.

This agreement was adopted by statutes of New York and New Jersey. Ch. 2, Gen. Laws N. Y. § 7, 1 Heydecker's ed. 69; 3 Gen. Stats. N. J. 3464, and was ratified by Congress, June 28, 1834, 4 Stat. 708. It was invalid until so ratified. Const. U. S., Art. I, § 10.

The effect of this statute of the United States was to vest in the United States jurisdiction over the littoral waters to the south and east of the coast line of New York and New Jersey. The statute and the agreement provide that this line shall run " to the main sea." These are technical words and it is well settled that when the phrase "main sea" or its equivalent "high seas," is used, it means the ocean from low water mark. *General Iron Screw Co.* v. *Schurmans,* 1 J. & H. 180; *The Saxonia,* 1 Lushington, 410; *The Franconia,* L. R. 2 Exch. Div. 63; *United States* v. *Kessler,* Baldwin, 15, 35; *Lennan* v. *Hamburg American S. S. Co.,* 73 App. Div. N. Y. 357, distinguished; 1 Blackstone Comm. 110; Bouvier, Title, High Seas; Coulsford and Forbes on Waters, 11; *United States* v. *Ross,* 1 Gallison, 624.

The agreement ratified by Congress shows on its face that it was drawn by eminent lawyers, one of whom, Benjamin F. Butler, soon after became Attorney General of the United States, and had been one of the revisers of the statute law of the State of New York. Another, Lucius Q. C. Elmer, was the author of the Digest of the Laws of New Jersey. Both of

these distinguished men were familiar with legal terms. If it had been their intention in drawing the agreement between the States to maintain the old jurisdiction of their respective States over the littoral waters within the three-mile limit, they certainly would have said so. The legislatures of the two States and Congress certainly would have used language apt for this purpose. See Art. II of treaty with Panama, Stat. 1903–04, 149 of Treaties.

*Mr. Gilbert D. Lamb* for defendant in error:

This court has no jurisdiction and will entertain none unless it affirmatively appears in the record that a Federal question was, of necessity, passed upon by the court below, and against the claim of plaintiff in error—actually and properly set up. *Giles* v. *Teasley*, 193 U. S. 146; *Water Co.* v. *Electric Co.*, 172 U. S. 475, 487; *Eustis* v. *Bolles*, 150 U. S. 361.

Plaintiff in error claims that the cession by the State of New Jersey to the United States of America of a certain strip of land at Sandy Hook vested in the United States exclusive legislative jurisdiction over the littoral waters extending three miles to the eastward of the coast line thereof, and that therefore a verdict should have been directed. The plaintiff in error explicitly limited its claim to exclusive Federal jurisdiction over the adjoining waters to the three-mile limit. The record, however, discloses evidence that the collision in question occurred beyond the three-mile limit.

The vessel sunk was owned by a New Jersey corporation and as such was subject with its occupants to the legislative jurisdiction and law of New Jersey, while on the high seas and wherever the situs of the collision, the verdict as rendered, was right. *Int. Nav. Co.* v. *Lindstorm*, 123 Fed. Rep. 475; *McDonald* v. *Mallory*, 77 N. Y. 546; *Crapo* v. *Kelly*, 16 Wall. 610; Code Civ. Pro. (N. Y.) § 522.

The claim of Federal jurisdiction, not being properly set up in the record, the writ of error should be dismissed. So held in *Hamburg-American S. S. Co.* v. *Lennan*, 194 U. S. 629, and

see authorities cited and *S. C.*, 73 App. Div. N. Y. 357; *The Alene*, 116 Fed. Rep. 57.

The rights of the United States at Sandy Hook extend only to low water mark. *Middleton* v. *La Compagnie &c.*, 100 Fed. Rep. 866; *Fort Leavenworth R. R.* v. *Lowe*, 114 U. S. 525.

MR. CHIEF JUSTICE FULLER, after making the foregoing statement, delivered the opinion of the court.

The assertion by plaintiff in error that Federal questions were decided by the action of the courts below turns on the denial of the motion to direct a verdict on the two grounds above set forth.

As to the first ground, the contention is that the act of Congress of June 28, 1834, 4 Stat. 708, c. 126, giving consent to the agreement or compact between the States of New Jersey and New York in respect of their territorial limits and jurisdiction, dated September 16, 1833, vested exclusive jurisdiction in the Federal Government over the sea adjoining the two States. But there is absolutely nothing in the agreement and confirmatory statutes abdicating rights in favor of the United States, and the transaction simply amounted to fixing the boundaries betw m the two States. Laws New York, 1834, p. 8, c. 8; Laws New Jersey, 1834, p. 118. The first proposition raised no Federal question.

As to the second ground, the contention is that the cession by New Jersey to the United States of jurisdiction over a certain strip of land at Sandy Hook vested in the United States exclusive legislative jurisdiction over the littoral waters extending three miles to the eastward of the coast line thereof.

Yet there was evidence introduced on behalf of defendant that the collision took place outside of that limit. And the trial court was not requested to instruct the jury that if they found the collision to have occurred within that limit the verdict should be for the defendant.

The charge of the court is not before us, nor was any excep-

tion taken to any part of it, and the verdict and judgment must be held to have been rendered on the facts according to law. *Hamburg-Am. S. S. Co.* v. *Lennan,* 194 U. S. 629.

This being the situation we hesitate to retain jurisdiction. Nevertheless, as clause 17 of section 8 of Article I of the Constitution [1] may be regarded as having been properly invoked by the second proposition, we feel justified in declining to sustain the motion to dismiss. And retaining jurisdiction, we think the judgment must be affirmed.

The jurisdiction of the United States over Sandy Hook is derived from the act of the legislature of New Jersey of March 12, 1846, set forth below.[2] Laws N. J. 1846, p. 124. In 1806 and 1817 deeds of the land included in Sandy Hook were given the United States, being simple conveyances of real estate for named money consideration.

The New Jersey act of 1846 was merely one of cession,

---

[1] The Congress shall have power . . . to exercise exclusive legislation in all cases whatsoever, over such district (not exceeding ten miles square) as may, by cession of particular States, and the acceptance of Congress, become the seat of Government of the United States, and to exercise like authority over all places purchased by the consent of the legislature of the State in which the same shall be, for the erection of forts, magazines, arsenals, dock-yards, and other needful buildings.

[2] 1. That the jurisdiction in and over all that portion of Sandy Hook, in the county of Monmouth, owned by the United States, lying north of an east and west line through the mouth of Youngs Creek at low water, and extending across the island or cape of Sandy Hook from shore to shore, and bounded on all other sides by the sea and Sandy Hook Bay, be, and the same is hereby, ceded to the said United States, for military purposes; and the said United States shall retain such jurisdiction so long as the said tract shall be applied to the military or public purposes of said United States, and no longer.

2. That the jurisdiction ceded in the first section of this act shall not prevent the execution on the said tract of land of any process, civil or criminal, under the authority of this State, except so far forth as such process may affect any of the real or personal property of the United States of America within the said tract; nor shall it prevent the operation of the public laws of this State within the bounds of the said tract, so far as the same may not be incompatible with the free use and enjoyment of the said premises by the United States for the purposes above specified.

.and the operation of the general laws of New Jersey was reserved as therein provided. *Fort Leavenworth R. R. Company* v. *Lowe,* 114 U. S. 525; *Chicago, Rock Island & Pacific Railway Company* v. *McGlinn,* 114 U. S. 542.

Moreover, as was held by the Circuit Court of Appeals for the Second Circuit, in *Middleton* v. *La Compagnie Générale Transatlantique,* 100 Fed. Rep. 866, the act did not purport to transfer jurisdiction over the littoral waters beyond low water mark, and for the purposes of this case the public laws of New Jersey must be regarded as obtaining there, whether enacted prior or subsequent to the cession.

*Judgment affirmed.*