## THE KAISER WILHELM DER GROSSE.

### THE ORINOCO.

(District Court, S. D. New York. December 17, 1909.)

1. ADMIRALTY (§ 5*)—JURISDICTION OF COURTS—SUIT AGAINST FOREIGN VESSELS.

A court of admiralty of the United States is not required to decline jurisdiction of a suit brought against foreign vessels, seized within its jurisdiction, belonging to different nations, for an injury which took place on the high seas, in the absence of any treaty provision affecting the case.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. § 77; Dec. Dig. § 5.*]

2. ADMIRALTY (§ 4*)—JURISDICTION OF COURTS—PLACE OF COLLISION—"HIGH SEAS."

A collision which occurred off a foreign port, although within a marine league of the coast, was nevertheless on the "high seas" for the purposes of jurisdiction of a suit arising therefrom.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 38-68; Dec. Dig. § 4.*

For other definitions, see Words and Phrases, vol. 4, pp. 3287-3289.]

3. JUDGMENT (§ 832*)—QUESTIONS CONCLUDED—DECREE OF FOREIGN COURT OF ADMIRALTY.

A decree of an English court of admiralty, determining the fault for a collision between the two vessels involved, is conclusive of such question as between such vessels in a subsequent suit against both in a court of admiralty of the United States to recover damages sustained by libelant in such collision.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1523-1525; Dec. Dig. § 832.*]

4. ADMIRALTY (§ 60*)—JURISDICTION—ALLEGATIONS OF PLEADING.

A libel which alleges that libelant sustained an injury, causing pain and suffering, in a collision between respondent vessels on the high seas, through their fault or the fault of one of them, states a cause of action cognizable in any court of admiralty jurisdiction.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 482-487; Dec. Dig. § 60.*

Admiralty jurisdiction of actions for torts, see note to Campbell v. H. Hackfeld & Co., 62 C. C. A. 279.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Admiralty. Suit by Mary Steurer against the steamships Kaiser Wilhelm der Grosse and Orinoco. Decree for libelant against the Kaiser Wilhelm der Grosse, and of dismissal as to the Orinoco.

Cushman & Dewell, for libelant.
Mr. Kiriin, for the Orinoco.
Mr. Thacher, for the Kaiser Wilhelm der Grosse.

HOUGH, District Judge. On November 21, 1906, a collision occurred between the two steamships above named, off the harbor of Cherbourg, France, but within a marine league of the French coast. On board the Kaiser Wilhelm libelant was a passenger, and sustained personal injuries by reason of collision. The Kaiser Wilhelm is a German vessel, the Orinoco British, and libelant, although a resident of the United States at the time of filing libel, is a subject of the emperor of Austria. Shortly after the collision actions were promoted between the owners of the two steamships in the Admiralty Division of the English High Court of Justice.

The above facts having been conceded, the libelant offered in evidence (under stipulation) the testimony taken in the English Admiralty Court, and the owners of the Orinoco offered on their part the pleadings and judgments in the causes referred to, from which it appears that the Admiralty Division decided that the Kaiser Wilhelm was solely responsible for the collision aforesaid, which decision was affirmed on appeal prior to the institution of this suit.

Thereupon the claimant of the Kaiser moves, inasmuch as neither vessel is a vessel of the United States, while the libelant is an alien and the place of disaster within the territorial limits of the Republic of France, that this court decline jurisdiction. This motion the other parties oppose.

The claimant of the Orinoco moves that, if the court be of opinion that enough is shown in the evidence to warrant a decree for the libelant against either steamer, such decree pass against the Kaiser Wilhelm alone, because responsibility to this libelant must rest upon the same facts which enabled the British courts to hold the Kaiser Wilhelm solely responsible for the collision and its consequences, and that therefore, as between the two steamships, the matter of their respective responsibility to all parties injured by said collision is res judicata.

To this motion libelant makes no objection; but it is opposed by the claimant of the Kaiser Wilhelm, which urges upon the court the propriety (if jurisdiction is assumed) of examining anew the testimony on which the English decrees are based.

1. To decline jurisdiction of this cause would, I think, be a departure from the long-established practice of all admiralty tribunals in the United States. Almost the sole purpose of declining jurisdiction is to avoid the transaction of unnecessary business. If there be an additional reason, it is to be found in treaty obligations, which do not affect this cause. Seizure (or its legal equivalent) of these vessels was effected within the territorial jurisdiction of this court, and all parties have appeared generally.

"Where the parties are not only foreign, but belong to different nations, and the injury * * * takes place on the high seas, there seems to be no good reason why the party injured * * * should ever be denied justice in our courts." The Belgenland, 114 U. S. 368, 5 Sup. Ct. 866, 29 L. Ed. 152.

These remarks are entirely applicable to this case, and so are those of Deady, J., in Bernhard v. Creene, 3 Sawyer, 235, Fed. Cas. No. 1,349, quoted with approval in The Belgenland, supra.

But it may be said that this disaster did not occur, and therefore the cause of action did not accrue, on the high seas—this on account of the place of collision. It may be admitted, and is, I think, true (if the law of France be the same as ours, of which, however, there is no proof), that France may exercise territorial jurisdiction over waters within a marine league of her own coast. But that does not prevent such waters being also a portion of the high seas. On this subject my views are expressed in United States v. Newark Meadows Improvement Co., 173 Fed. 426.

The motion to decline jurisdiction is denied.

2. It has been often said that in order to render a judgment res judicata it must not only be given by a court of competent jurisdiction, but by a domestic court. Such, however, is the comity between admiralty courts of civilized countries that as early as 1808 it was declared in Croudson v. Leonard, 4 Cranch, 434, 2 L. Ed. 670, that:

"It is a well-established rule in England that the judgment, sentence, or decree of a court of exclusive jurisdiction directly upon the point may be given in evidence as conclusive between the same parties upon the same matter coming incidentally in question in another court for a different purpose. It is not only conclusive of the right which it establishes, but of the fact which it directly decides. This rule, when applied to the sentences of courts of admiralty, whether foreign or domestic, produces the doctrine (aforesaid) upon the ground that all the world are parties in an admiralty cause. * * * A spirit of comity has induced the courts of England to presume that foreign tribunals, whether of prize or municipal jurisdiction, will act fairly, and will decide according to the laws which ought to govern, and public convenience seems to require that a question which has once been fairly decided should not again be litigated between the same parties unless in a court of appellate jurisdiction."

That was a case of prize, but the rule so early established is much wider. For the application of the rule to the facts of this case, The City of Lincoln (D. C.) 25 Fed. 835, is an explicit authority.

Judge Brown founded his application of the rule in part upon the analogy of equity and of the cases cited by him. Farquharson v. Seton, 5 Russ. 45, is exactly in point.

In Bailey v. Sundberg (D. C.) 43 Fed. 81, the same learned judge said:

"In a suit in rem before a court of competent jurisdiction, fairly prosecuted, all persons having an interest in the subject-matter and their privies are deemed parties, and are bound by the decree, both as respects the res itself and the questions necessarily involved in the adjudication."

And that principle was fully recognized by Wallace, J., on appeal in 49 Fed., at page 586, 1 C. C. A. 387.

In this as in all admiralty causes promoted against more than one claimant or respondent, the libelant must make out a prima facie case of fault by the vessels sued. The L. P. Dayton, 120 U. S., at page

350, 7 Sup. Ct. 568, 30 L. Ed. 669. This has been done by the introduction of the British record. That record shows that a decree should pass against one or both of said vessels, because libelant was injured by a collision in no way due to fault of hers, and evidently not due to inevitable accident.

If any claimant thinks that no case has been made by the libelant against his vessel, he may rest without evidence; but the libelant (after making no more than a prima facie case) can, according to established admiralty practice, leave the parties defendant to litigate between themselves as to ultimate liability. This libelant has followed that course, and her interest in their controversy is limited to costs.

There is, therefore, in this cause a litigation between the two claimants, and in my opinion not only may this court follow the judgment of the English tribunals, but it must do so. For "the general principle announced in numerous cases is that a right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction as a ground of recovery cannot be disputed in a subsequent suit between the same parties or their privies." Southern Pacific R. R. v. United States, 168 U. S., at page 48, 18 Sup. Ct. 27, 42 L. Ed. 355.

It is not necessary that the parties should be the same, nor that the cause of action be the same; it is enough if a fact directly in issue in this litigation has been solemnly decided by another court of competent jurisdiction in an action between the parties to be affected by the decision of the same fact in this case. It clearly appears that in such an action between these two claimants the Kaiser Wilhelm was adjudged solely at fault for the collision alleged in the pleadings herein, and that fact the Kaiser's claimant cannot now deny as against the Orinoco.

It must be admitted that, the libelant not having been a party to the English actions, nor privy to either party therein, is not bound by those judgments. If this action had been promoted against either vessel alone, it would have been necessary to decide the case anew, and it may even be admitted (though not decided) that, if the libelant here insisted upon a recovery against both vessels, she would be entitled to be heard. But such is not the case. She has shown enough to entitle her to some decree, and is now content to leave to claimants the question as to what decree shall pass.

The decrees given in evidence by the Orinoco cannot, I think, be regarded as strictly res judicatæ, in the sense of being a bar to the action; but they are conclusive and nonrebuttable evidence of the fact of fault, and this is sufficient for our purposes.

Further, therefore, than to hold that the libelant has made out a prima facie case of fault, I do not find it necessary to consider the evidence submitted, and accordingly hold that this court is bound to follow (mutatis mutandis) the English decrees.

3. It is perhaps essential to the jurisdiction here assumed that libelant's right or cause of action shall be communis juris. The libel sets forth the law of France, but no proof of that law has been offered. It also, however, avers pain and suffering caused by the fault of the steamships, or one of them, and concludes with the usual jurisdictional assertion. This is a sufficient averment of a marine tort, and if such

tort be committed on the high seas it is communis juris among all courts possessing admiralty and maritime jurisdiction.

A decree will pass against the Kaiser Wilhelm der Grosse, with costs. The libel as against the Orinoco will be dismissed, also with costs. There does not appear to be any necessity for a reference to ascertain damages. If counsel desires one, it may be moved for; if not, an appointment may be made to consider the question of damages.