## UNITED STATES v. VARIOUS TUGS AND SCOWS.

(District Court, S. D. New York. April 12, 1915.)

1. NAVIGABLE WATERS ⬦14—REFUSE—DUMPING IN HARBOR.

Act June 29, 1888, c. 496, 25 Stat. 209, as amended by Act Aug. 18, 1894, c. 299, 28 Stat. 360, forbidding the dumping of refuse in the tidal waters of the harbor of New York within the limits prescribed by the supervisor of the harbor, is valid, both under the police power and under the admiralty jurisdiction, even though the limits prescribed by the supervisor are beyond a marine league from the shore; and a permit to dump not less than four miles east southeast of Scotland Light excludes, by implication, dumping within New York Harbor inside of that point, and thus defines the precise limits within which such scows or boats may be discharged.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 31–42; Dec. Dig. ⬦14.]

2. NAVIGABLE WATERS ⬦14—DUMPING IN HARBOR—CRIMINAL PROSECUTION—PENALTY.

Under Act June 29, 1888, c. 496, § 1, 25 Stat. 209, and section 3, as amended by Act Aug. 18, 1894, c. 299, 28 Stat. 360 (Comp. St. 1913, §§ 9933, 9935), forbidding the dumping of refuse in the tidal waters of the harbor of New York within the limits prescribed by the supervisor of the harbor, and providing that any deviation from the dumping place specified in the permit shall be a misdemeanor, and that the owner and master of any scows or boats dumping in any place other than that specified in the permit shall be liable to punishment as provided in section 1, and that the owner and master of any tug towing such scows or boats shall be liable to equal punishment with the owner and master of the scows or boats, all parties concerned are liable, though there is but one wrongful act and but one penalty in amount is to be imposed.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 31–42; Dec. Dig. ⬦14.

3. STATUTES ⬩241—CONSTRUCTION—PENAL STATUTE.

A penal statute is to be construed strictly, especially where a liability is imposed upon persons who may be in no way at fault.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 322, 323; Dec. Dig. ⬩241.]

4. NAVIGABLE WATERS ⬩14—DUMPING IN HARBOR—CRIMINAL PROSECUTION —FEDERAL STATUTE.

Under Act June 29, 1888, c. 496, 25 Stat. 209, as amended by Act Aug. 18, 1894, c. 299, 28 Stat. 360, making it a criminal offense to dump refuse in the tidal waters of New York Harbor within prescribed limits, section 4 (Comp. St. 1913, § 9937) of which provides that any boat used or employed in violating the act shall be liable to the penalties imposed thereby and may be proceeded against by libel, where one of the boats is innocent the other may, under the ordinary admiralty procedure, be held primarily liable; and a vessel whose owner and master are neither at fault may be subject to the penalty.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 31–42; Dec. Dig. ⬩14.]

5. NAVIGABLE WATERS ⬩14—DUMPING REFUSE IN HARBOR—CRIMINAL PROSECUTION—PENALTIES—"DEFECTIVE MACHINERY."

In a prosecution under Act June 29, 1888, c. 496, 25 Stat. 209, as amended by Act Aug. 18, 1894, c. 299, 28 Stat. 360, against various tugs and scows for dumping refuse in the tidal waters of the harbor of New York within the limits prescribed by the supervisor of the harbor, a breeze, gradually increasing to a gale, was not sufficiently sudden to excuse the master of the tug and the master of the scows from not getting to safe anchorage before the necessity of dumping to save the scowman's life on account of the heavy seas, and the negligence, though not gross, was inexcusable, and subjected the tug and the scow to a single minimum penalty; and "defective machinery," declared to be no excuse, means machinery unsuited for the purpose or out of repair, and does not refer to a sudden breaking down of properly installed and inspected machinery, so that the dumping of a recently overhauled scow because the pawl suddenly broke would not be penalized; and where a scow was deliberately or through gross carelessness dumped within the limits, all the vessels were liable to a single penalty of $500; and where a scow was not given opportunity by the tug to dump, a single penalty would be imposed primarily on the tug; and where a scow was dumped because the scowman feared swamping, though the dumping was not due to any unavoidable situation, a minimum single penalty would be imposed payable primarily by the tug; and where a scow was dumped while in some peril of swamping, without intentional wrongdoing, a single minimum penalty would be imposed upon the scow; and where a dumping was due to too heavy a load, without intentional misconduct, a single minimum penalty was payable by the scow; and where a dumping was occasioned by the sudden breaking of one of the bridle chains on the day the scow had been inspected, it would not be penalized.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 31–42; Dec. Dig. ⬩14.]

For other definitions, see Words and Phrases, First and Second Series, Defective Machinery.]

In Admiralty. Proceedings by the United States against various tugs and scows. Penalties imposed against part of the libelees, and libels against others dismissed.

AUGUSTUS N. HAND, District Judge. These are proceedings in admiralty to recover penalties against various tugs and scows for dumping "in the tidal waters of the harbor of New York or its adja-

cent or tributary waters" within the limits prescribed by the supervisor of the harbor.

[1] I have no doubt that the act of Congress forbidding such dumping is lawful both under the so-called "police power" and also under the admiralty jurisdiction even though the limits prescribed by the supervisor of the harbor are beyond a marine league from the shore. Any other interpretation of the national power would render the government impotent to protect the harbors and adjacent channels and waters, which it dredges at great expense, from dumping by the vessels, which are only enabled safely to navigate by reason of this governmental aid. Whether maritime jurisdiction as between nations extends beyond a marine league from the shore is not material for the present purpose.

Judge Hough in the case of United States v. Newark Meadows Improvement Co. (C. C.) 173 Fed. 426, held that the place where the dumping actually occurred was within the federal district of New Jersey, and accordingly quashed the indictment, but made the following observations on the nature of the jurisdiction in case proceedings should be brought in admiralty:

"This conclusion does not lessen or interfere with the national jurisdiction in admiralty. Admiralty causes may be promoted wherever the res or respondent is found and seized or served. A remedy in admiralty might have been given for the offense of illegal dumping; but this proceeding has no relation to admiralty. It is strictly criminal, and the place where the crime was committed governs jurisdiction."

In The Bombay (D. C.) 46 Fed. at page 666, Judge Benedict explained the nature of the proceeding as follows:

"The intention of the statute seems to me to be 'that the vessel is to be considered and treated as itself violating the statute,' * * * when the vessel is the instrument by means of which the violation of the statute is accomplished. Such legislation is not infrequent. It conforms to that feature of the maritime law which makes the ship liable for collision caused by the act of a seaman done, it may be, in violation of orders; liable to forfeiture for goods smuggled by means of her; liable for negligent navigating by a pilot compulsorily in charge of her. If that be the intent of the statute, I do not see why this case is not within it."

The act which forbids dumping provides that the owner or master of every towboat shall apply for and obtain from the supervisor of the harbor a permit defining the precise limits within which the discharge of such scows or boats may be made. I can see no reason to contend, in any of the cases under consideration, that the supervisor did not precisely prescribe the limits within which the scows should dump. In The Sadie (C. C.) 41 Fed. 396, Judge Lacombe held that a similar permit to those granted in the cases under consideration sufficiently specified the prohibited area. It seems to me that a permit to dump not less than four miles east southeast of Scotland Light ship excludes by implication dumping within New York Harbor and its adjacent or tributary waters inside of that point, and thus defines the precise limits. See U. S. v. Romard (C. C.) 89 Fed. 156.

[2, 3] The most difficult question to determine is whether the act intended to impose more than a single penalty. In Marsh v. Shute,

1 Denio (N. Y.) 230, and Palmer v. Conly, 4 Denio (N. Y.) 374, the New York courts held under circumstances analogous to the present that but one penalty should be imposed. Section 1 provides that dumping within the prescribed limits is forbidden "and every such act is made a misdemeanor." Section 3, as amended, reads as follows:

"And any deviation from such dumping or discharging place specified in such permit shall be a misdemeanor, and the owner and master, or person acting in the capacity of master, of any scows or boats dumping or discharging such forbidden matter in any place other than that specified in such permit shall be liable to punishment therefor as provided in section one * * * and the owner and master, or person acting in the capacity of master, of any tug or towboat towing such scows or boats shall be liable to equal punishment with the owner and master, or person acting in the capacity of master, of the scows or boats."

It is, of couse, true that a penal statute is to be construed strictly, especially as a liability is here imposed upon persons who may be in no way in fault. While I think the act is a valid exercise of the police power in furtherance of the public safety and welfare, I am disposed to construe it strictly, in view of the general canon of construction alluded to, and particularly because of the language quoted, which defines any deviation from the discharging place as "a misdemeanor," and every act of depositing material "a misdemeanor." While all parties concerned are liable, I think it is properly urged that there is but one wrongful act, and but one penalty to be imposed as prescribed by the statute. Any other construction would frequently lead to a grotesque result. If, for example, there should be several tugs with different owners and masters, the wrongful discharge of his load by a single scowman would cause the amount of the penalty to be determined by the accidental number of owners and masters of tugs rather than by the gravity of the offense of the culpable scowman. The Bombay (D. C.) 46 Fed. 666, fixed the penalty upon the basis of a single offense at $250.

[4] Section 4 provides that any boat used or employed in violating any provision of the foregoing act shall be liable to the penalties imposed thereby, and may be proceeded against summarily by way of libel. I agree with Judge Mayer, who has recently delivered an opinion in another case, that under these circumstances where one of the boats is innocent, the other one may, under the ordinary admiralty procedure, be held primarily liable.

It is urged by numerous claimants in the several cases that a vessel whose owner and master are neither at fault cannot be subject to a penalty. The Circuit Court of Appeals in Jaycox v. U. S., 107 Fed. at page 940, 47 C. C. A. 85, discussed this very matter, and held to the contrary. The following language of Judge Wallace is directly in point:

"It is urged in behalf of Jaycox, as well as in behalf of the other defendants, that the statute is beyond the constitutional power of Congress if it is to be construed as making a person who is innocent of criminal intent criminally liable for the act of another. We are aware of no authority supporting the proposition that the presence of a criminal intent is an essential element of a statutory offense. * * *

"The statute does not make any person criminally liable for an act committed without his participation. The participation of the master of the

towboat and the masters of the scows is found in the circumstance that they are assisting in the general undertaking in the course of which the forbidden act is done. Neither one of them is under any obligation to engage in such an enterprise, and, if he chooses to engage in it, he does so at the peril of incurring criminal responsibility if it is not pursued lawfully; and no principle of natural justice is violated by a statute which makes him responsible for the conduct of his coadjutor. The statute, in effect, says to the masters of the vessels, 'If you wish to assist in dumping refuse, you must do so at the risk of criminal responsibility for the acts of your associates as well as for your own.' The statute is a severe one, but this does not militate against its validity. Its stringency may be necessary to compel all those who engage in dumping refuse within the waters specified to see to it beyond peradventure that the regulations of the statute are complied with."

[5] With the foregoing general rules for guidance, I shall, therefore, proceed to dispose of the cases before me.

### Steam Tug J. Rich Steers and Scows Delaware and J. J. No. 2.

H. Snowden Marshall, U. S. Atty., and John Hunter, Asst. U. S. Atty., both of New York City.

Charles Thaddeus Terry, of New York City, for claimant.

In this case the wind increased so that the scowman testified that he had to lighten two of the pockets in his scow by dumping, to save his life, on account of the heavy seas. This was done near the Scotland Light, some three miles inside the dumping grounds. The wind was blowing about 40 miles per hour. I do not hold that a sudden storm would be no excuse, and I should in fact regard dumping under such circumstances an unavoidable accident, but here a breeze, gradually increasing to a gale, was not sufficiently sudden to excuse the master of the tug and the master of the scows from getting to some safe anchorage before the danger arose and such a serious act as dumping the load became necessary. I do not think the negligence was gross, but the act, on the other hand, was not excusable. Under the circumstances I will impose a single minimum penalty of $250 upon the tug and scows.

### Tug J. R. Steers and Scow No. 8.

H. Snowden Marshall, U. S. Atty., and Earl B. Barnes, Asst. U. S. Atty., both of New York City.

Charles Thaddeus Terry, of New York City, for claimant.

Here, though the scow had been recently overhauled and also inspected immediately before going out, the scow dumped because the pawl suddenly broke. Defective machinery is, by the terms of the statute, no excuse. I think, however, that defective machinery means machinery unsuited for the purpose or out of repair, and does not refer to a sudden breaking down of properly installed and inspected machinery. In this case, therefore, the libel should be dismissed.

### Bouker No. 2 & Scows 72 H, 73 H. & 75 H.

H. Snowden Marshall, U. S. Atty., and Earl B. Barnes, Asst. U. S. Atty., both of New York City.

Foley & Martin, of New York City, for claimant.

I think in this case the scow either deliberately or by gross carelessness dumped short of the dumping grounds, and I shall impose a single penalty of $500 upon all the vessels.

### Tug Princess and Scow Juno.

H. Snowden Marshall, U. S. Atty., and Harold Harper, Asst. U. S. Atty., both of New York City.

Foley & Martin, of New York City, for tug.

Alexander & Ash, of New York City, for scow.

The scow was not given opportunity by the tug to dump. The tug turned back hurriedly and the scow pockets leaked after it had passed beyond the dumping limits. As the carelessness does not seem to have been gross, I impose a single penalty of $250, to be paid primarily by the tug.

### Tug Bismarck and Scow Montreal.

H. Snowden Marshall, U. S. Atty., and Earl B. Barnes, Asst. U. S. Atty., both of New York City.

Foley & Martin, of New York City, for claimant.

The scow appears to have dumped, according to statements of the parties, because the scowman feared swamping in a heavy swell. I am not satisfied that the dumping was due to any unavoidable situation, but the conduct was not seriously inexcusable, and I therefore impose a minimum single penalty of $250, to be paid primarily by the scow.

### Tug Hazelton and Scow No. L. C. 1.

H. Snowden Marshall, U. S. Atty., and Harold Harper, Asst. U. S. Atty., both of New York City.

Foley & Martin, of New York City, for tug Hazelton.

Alexander J. Lindsay, of New York City, for claimant owner of scow.

In this case it is probable that the hatch came off and rendered the scow in some peril of swamping if the load was not lightened, and, as the scowman is dead and the owner is therefore deprived of his testimony, I shall impose the minimum single penalty of $250, as there was evidently no intentional wrongdoing. I do not think any competent evidence was adduced showing an unavoidable accident. This penalty should be paid by the scow.

### Tug Bismarck and Scow No. 9.

H. Snowden Marshall, U. S. Atty., and Harold Harper, Asst. U. S. Atty., both of New York City.

Foley & Martin and Charles Thaddeus Terry, all of New York City, for claimants.

The dumping by the scow in this case was due to too heavy a load, but there was no intentional misconduct or gross negligence. I will therefore impose the minimum single penalty of $250, to be paid primarily by the scow.

*Tug Princess and Scow Guiding Star.*

H. Snowden Marshall, U. S. Atty., and Harold Harper, Asst. U. S. Atty., both of New York City.

Foley & Martin and Harrington, Bigham & Englar, all of New York City, for claimants.

At the trial I dismissed the libel in the case of tug Princess and scow Guiding Star because the scow had been overhauled the month before the accident and inspected that day. The dumping was occasioned apparently by the sudden breaking of one of the bridle chains, and I deemed the accident unavoidable.

My decision involves no intimation that these misdemeanors are to be construed as a joint act, and constitutes only a finding that but one penalty in amount shall be imposed. It may be imposed, however, either in admiralty or in a criminal proceeding upon the statutory offenders, as the court deems best. This construction enables the court to impose, in cases of slight negligence, a total penalty of but $250 against all parties, as was done in The Bombay (D. C.) 46 Fed. 666.

I may add to the foregoing that I have, in some cases, imposed a somewhat smaller penalty than I should do hereafter because the enforcement of the statute, except in cases of gross misconduct, has not been strict. I have therefore desired to give the owners of tugs and dumping scows some warning before imposing as severe penalties as may be looked for in the future.